Alice Finch Drueck, Appellee, v. Ocie W. Peterson et al., Defendants.
Appeal of United Cooperative Projects, Inc., Appellant.

Gen. No. 44,923.

Opinion filed March 8, 1950. Rehearing denied March 31, 1950. Released for publication April 3, 1950.

LEON M. DESPRES, of Chicago, for appellant.

HEALY, NEWBY, CESSNA & HEALY, of Chicago, for certain appellee.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, for certain other appellee; L. LOUIS KARTON, Head of Appeals and Review Division, and SYDNEY R. DREBIN, Assistant Corporation Counsel, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an injunction suit based on an alleged violation of the Chicago Zoning Ordinance. The cause was referred to a Master. After his Report was filed, the City was permitted to file a petition adopting plaintiff's second amended complaint. The decrees in favor of plaintiff and City dismissed the individual defendants and enjoined the Cooperative from further use of the property as a family residence. The Cooperative has appealed.

Plaintiff's home at 4840 Greenwood Ave. Chicago, contains fifteen rooms and was purchased in 1944 for $15,750.00. It is occupied by plaintiff, her husband, their son and plaintiff's sister. The Cooperative's property involved is next door south at 4850 Greenwood avenue. The Cooperative owns the building and its members have been occupying it since March 1946. The building is a single dwelling having eleven bedrooms, two common study rooms, and a common kitchen, dining room, living room, and a typewriting

166

room. A maximum of thirty-three Cooperative members have lived in it, of whom twenty-four were university students, five associated with universities, and four employed elsewhere. Seventeen of these are women and sixteen are men. There are two married couples. The sleeping accommodations are arranged so that the men occupy the third floor and the women the second. These floors are reached by separate stairways.

The Cooperative is not for profit and was organized under the District of Columbia Cooperative Association Act. It is licensed to operate in Illinois. The members share expenses, work, and responsibility in maintenance. The average monthly cost for each member is about $40.00. This is based upon a house budget with expenses shared equally. Its charter purposes are to own and operate residential property on a cooperative basis and to educate members and others in the philosophy, purposes and practices of common cooperation. The Cooperative owns one other house and rents three others in Chicago. It provides central bookkeeping and financial services of a treasurer for the five housing cooperatives which have been in existence since 1938. All residents of the houses are members of the Cooperative. Each receives a certificate upon admission and payment of $10.00. Certificates are not transferable.

Each house elects two directors and the membership of 120 elect the officers. The members elect a president and other officers each quarter. The president is head of the house. Through the officers the labor is distributed, food purchased and meals planned, and education and social programs arranged. Each house has a treasurer to whom each occupant of the house pays his share of the upkeep expense. This treasurer then deposits the money with the central treasurer. A cook is employed for the evening meal. Other meals and

Sunday meals are prepared by the members. The Master found that the maintenance of the house and conduct of the members were above criticism.

Both plaintiff's and defendant's houses are in a Family Residence use district under the Chicago Zoning Ordinance. Plaintiff's complaint filed January 1947 charged that the occupants were not members of a family, nor related; that the use was a violation of the Zoning Ordinance; that the use has brought conditions which have increased health and fire hazards, denied plaintiff peace and quiet, and was a constant source of injury and damages; and that the use depreciated the market value of her property by $10,000.00 and the rental value by $125.00 per month. The Cooperative answered setting forth specific uses similar to its in the district and alleging they were condoned by plaintiff and practically construed by the City as not violations; that defendant's members occupied as a single housekeeping unit; and denied damages to plaintiff or depreciation of her property. Plaintiff replied that the manner of occupancy and the similar uses were immaterial. These were the issues referred to the Master. The Master's Report was filed March 10, 1949. On that day the City filed an amended petition adopting the plaintiff's second amended complaint and further alleged that the present use tended to change the neighborhood's character. The Cooperative denied the allegation. It was stipulated the evidence taken before the Master should apply to this issue made by the City.

The decree entered April 29, 1949, approved the Master's Report. Defendants Peterson and Sawyer were dismissed. The Chancellor found the equities with plaintiff, the use by defendant a violation of the Zoning Ordinance in that the use was not a family use and ordered the injunction. A later decree of May 23, 1949, contained substantially the same find-

168

ings and order on the issue made between City and defendant.

Defendant contends that its use is Family Residence within the definition of the Zoning Law and the administrative practices of the City; that plaintiff has failed to show damage; that the City is not entitled to adopt plaintiff's complaint; and that, should we decide against it on the first point the ordinance as applied would be unconstitutional as denying due process and equal protection of the laws.

 The City is authorized (Section 73–9, Ch. 24, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 21.2130]) to institute any appropriate action to prevent a zoning violation. We see no objection to the procedure followed in this case. No question of laches was raised in the trial court consequently it cannot be raised here. There was opinion evidence both that defendant's use had an adverse effect on plaintiff's property and that it does not necessarily affect that value. The evidence as to how much the value of plaintiff's property was affected does not rest on a definite basis. We think however there was sufficient evidence for the Master's finding that there was an adverse effect on the value of plaintiff's property. The City was not required to show special damage.

██ Defendant made proof of numerous "similar uses." This proof was designed to show a previous practical interpretation of the Zoning Ordinance under which defendant's use would be permitted. Section 5, Family Residence district permits three classes of uses; (a) Family Residence; (b) churches, convents, monasteries, rectories, parish houses, etc., and (c) auxiliary uses, such as professional offices, signs, etc. Class (a) is designated only by the words Family Residence. Class (b) uses are limited to lots surrounded by streets or alleys, adjoining apartment house, specialty, business, commercial, industrial dis-

tricts, railroad right of ways, or adjoining a lot devoted to a like use. The provisions of class (c) are not relevant. There is no proof that the "similar uses" were not within the limits set by the class (b) uses. We therefore presume that those uses were in conformity with the ordinance.

■ The City Council differentiated the named uses in (b), similar to defendant's, from the unqualified use in (a). Family Residence is defined in Section 2 as follows:

"Family Residence—a building entirely separated from any other building by space, designed, arranged, used, or intended to be used as one apartment."

We infer from the plain division in Section 5 that though defendant's use might fall within the definition of Family Residence the use is not ipso facto permitted under Section 5 (a). On the contrary we think it is clear that the exclusion therefrom of the uses similar to defendant's likewise excludes defendant's use.

We think it is unnecessary to consider definitions of family or whether defendant's use constitutes a boarding house. We see no need to refer to the early ordinance or later amendments for aid in construing the ordinance as it was when defendant bought the property. The Cooperative relies mainly on *Harmon v. City of Peoria*, 373 Ill. 594, *Anderman v. City of Chicago*, 379 Ill. 236, and *City of Syracuse v. Snow*, 205 N. Y. S. 785. The plaintiff relies principally on *Cassidy v. Triebel*, 337 Ill. App. 117. These case are different from the instant case both on ordinances and facts.

■ Defendant contends that in any event the ordinance as applied to its property is arbitrary and unreasonable and void for denial of due process and equal protection of the law. It relies upon an assumed violation of 30–37½ per cent of the uses in the area. We have already pointed out that we presume the uses

170

referred to are lawful. We cannot tell otherwise from the evidence or briefs nor from our observation of the zoning maps in the record. There is nothing per se unreasonable about the classification (a) in the Family Residence district. *Minkus v. Pond,* 326 Ill. 467, 477. We accordingly hold that this contention of the defendant is without merit.

For the reasons given the decrees are affirmed.

*Decrees affirmed.*

Lewe, P. J., and Burke, J., concur.