GRANT REICHARD *et al.* Plaintiffs—(THE CITY OF PARK RIDGE, Plaintiff-Appellee,) *v.* ZONING BOARD OF APPEALS OF THE CITY OF PARK RIDGE *et al.*, Defendants—(ALL AMERICAN LIFE AND CASUALTY COMPANY, Defendant-Appellant.)

(No. 55890; )

First District—November 1, 1972.

Albert A. Klest, of Park Ridge, for appellee.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, (R. Marlin Smith, David L. Callies, and Karl J. Bemesderfer, of counsel,) for appellant.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County reversing a decision of the Zoning Board of Appeals of Park Ridge which granted to the appellant, All American Life and Casualty Company ("All American"), a variation permitting construction of a seven story office building, 88 feet in height, in a zoning district where the height limit is 40 feet.

The subject property, which is owned by All American, is located on the north side of Higgins Road west of its intersection with Cumberland Avenue. It has an east-west dimension of approximately 331 feet and north-south dimensions varying from 258 feet at the western boundary to 300 feet at the eastern boundary. It is located in the "D" commercial zoning district, to which regulations of the "D-D" district are made applicable by section 256.1 of the Park Ridge Zoning ordinance. Section 256-3 of the ordinance provides that:

> "No building hereafter erected or altered in the 'D-D' Commercial districts shall exceed forty feet (40 ft.) in height or three (3) stories."

All American filed an application for a variation of the height limitation. The Zoning Board of Appeals took evidence at a hearing on April 10, 1970, and on April 17 granted the variation to All American. The board's decision was not mailed, however, until April 24, A complaint for administrative review of the board's decision was filed on May 25th in the Circuit Court of Cook County by Grant Reichard, John Fayes and Robert Milnikel, residents and property owners of Park Ridge. The complaint named as defendants the Zoning Board of Appeals and its members, the City of Park Ridge, All American, various city officials and others. On July 27, 1970, the City of Park Ridge moved to be realigned as a plaintiff. The motion was granted, and Park Ridge adopted the complaint filed by the individual plaintiffs. On December 18, 1970, the Circuit Court entered its order reversing the decision of the Zoning Board or, in the alternative, reversing and remanding to the Board to make further findings of fact. This appeal by All American followed.

On appeal All American raises the following contentions:

> (1) Park Ridge is not authorized and empowered to contest a final decision of its own zoning board of appeals.

> (2) Park Ridge is not a "person aggrieved" within the meaning of controlling Illinois law.

(3) Park Ridge did not seek judicial review in a timely manner.

(4) The Zoning Board of Appeals made adequate findings of fact; and

(5) The findings of the Zoning Board of Appeals were supported by substantial evidence.

We first consider whether Park Ridge has authority to seek judicial review of a decision of its own zoning board of appeals. All American urges that Park Ridge has no such authority and cites in support of its position *Village of Bensenville v. County of Du Page*, 30 Ill.App.2d 324; *Village of Mount Prospect v. County of Cook*, 113 Ill.App.2d 336 and *Krembs v. County of Cook*, 121 Ill.App.2d 148. We believe the cases cited by All American are distinguishable from the present case.

In *Bensenville*, the issue before the court was whether a municipality had standing to attack a decision of Du Page County authorities to rezone contiguous unincorporated land. The court held that in the absence of a statute explicitly conferring a right to maintain such an action the municipality lacks standing. In *Mount Prospect*, the municipality sought to attack a zoning decision of Cook County, alleging special damages. The court held that Mount Prospect had no standing to maintain its action. In *Krembs*, the Village of Northbrook attempted to intervene to defend zoning action taken by Cook County. Relying on *Mount Prospect* the court upheld the denial of the petition for leave to intervene.

All of the foregoing cases involved an attempt by the municipality to attack action taken by county zoning authorities with respect to land located outside the corporate limits of the municipality. In holding that the municipality did not have the power to attack action taken by the county zoning authorities, the court in *Mount Prospect* cited section 11-13-1 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24) which provides in part:

"No municipality shall exercise any power set forth in this Division 13 outside the corporate limits thereof, if the county in which such municipality is situated has adopted 'An Act in relation to county zoning.'"

Thus these cases turned upon the fact that the statute deprived the municipalities of the power to attack zoning action taken with respect to land situated outside their corporate limits. In the present case there is no question that the land owned by All American was within the corporate limits of Park Ridge, and we believe that the decisions relied upon by All American do not apply.

There appear to be no cases in which the Illinois courts have considered the precise question of whether a municipality has the power to obtain judicial review of a decision of its zoning board of appeals. It is

our conclusion that such a power is implicit in the provisions of the Municipal Code. Zoning variations in municipalities of less than 500,000 population are covered by section 11-13-5, which provides that such variations may be granted by the board of appeals or the corporate authorities. When authority to grant variations is vested in the board of appeals, it must be exercised in accordance with the conditions imposed by section 11-13-4. In the present case, authority to grant variations was in the board of appeals and was therefore subject to the conditions of section 11-13-4. Section 11-13-4 provides in part that:

> "A decision of the board of appeals shall not be subject to review, reversal or modication by the corporate authorities but shall be judicially reviewable under the provisions of Section 11-13-12."

This language is troublesome, as section 11-13-12 does not deal with judicial review at all but with appeals to the board of appeals. Prior to 1961, section 11-13-4, which was then section 73-4 (Ill. Rev. Stat. 1959, ch. 24), read:

> "A decision of the board of appeals shall not be subject to review, reversal or modification by the corporate authorities but shall be judicially reviewable under the provisions of Section 73-6.01."

Section 73-6.01 provided:

> "All final administratve decisions of the board of appeals under this Article shall be subject to judicial review pursuant to the provisions of the 'Administrative Review Act' * * *."

Thus the statute clearly is intended to provide for judicial review of decisions of the board of appeals although it does not specify who may obtain such review. We believe, however, that the history of sections 73-6.01 and 11-13-13, the counterpart of section 73-6.01 in the present Municipal Code, indicates an intent that municipalities should have this power. Section 73-6.01 was enacted in 1949 to replace section 73-6 (Ill. Rev. Stat. 1947, ch. 24), which provided that:

> "All persons jointly or severally aggrieved by any decision of the board of appeals, or any officer, department, board or bureau of the municipality, may present to a court of record a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality."

■■ Section 73-6 was part of the Municipal Code at the time of the enactment of the Administrative Review Act. The Administrative Review Act abolished the common-law action of *certiorari*, which was the method provided by section 73-6 for the review of zoning board decisions, and it is apparent that the legislative purpose in enacting section 73-6.01 was to fill the void this created by providing for review of such decisions according to the provisions of the Administrative Review Act. In the Mu-

nicipal Code of 1961 (Ill. Rev. Stat. 1961, ch. 24), section 73-6.01 was replaced by section 11-13-13, which contains substantially the same language. We believe that in enacting section 73-6.01 the legislature intended to continue under the provisions of the Administrative Review Act the same character of judicial review which theretofore had been available under the common law. Section 73-6 specifically provided for judicial review by officers, departments, boards and bureaus of municipalities, and it is our view that this power was carried over by implication into section 73-6.01 and the present section 11-13-13. With this in mind, we reject All American's contention that the language of section 11-13-13, which does not specifically mention officers, departments, boards and bureaus of municipalities, is meant to contract the class of persons entitled to seek judicial review of zoning board decisions and we hold that Park Ridge has the power to obtain judicial review of the decision of its zoning board of appeals.

The power which we now recognize was recognized by implication in *People ex rel. Interchemical Corp. v. City of Chicago,* 29 Ill.2d 446, 450, where the Illinois Supreme Court stated:

> "Since the City did not pursue its remedy under the Administrative Review Act the decision of the board [of appeals] is binding upon it."

In the present case, the only remedy available to Park Ridge is an action for administrative review. As stated in *Interchemical,* if it did not have such a remedy, the decision of the board of appeals would be final and binding, and Park Ridge would be compelled to issue a permit for the construction. A rule that would preclude the municipality from seeking judicial review would, in effect, grant to zoning boards unbridled power not reviewable in any court except in situations where private citizens suffer injury different from that suffered by the general public.

■■■ Having concluded that Park Ridge has standing to obtain judicial review of the decision of its zoning board of appeals, we turn to appellant's contention that Park Ridge is not a person aggrieved within the meaning of the statute. The language of section 73-6, which we believe to have been incorporated into the broader language of section 11-13-13, enumerates the classes of persons who may obtain judicial review and is in the alternative. Review may be obtained by "any person aggrieved *or* by any officer, department, board or bureau of the municipality." (Emphasis added.) As we read this statute, this language confers upon officers, departments, boards and bureaus of municipalities the power to obtain judicial review whether or not such bodies are persons aggrieved. As it is our view that the power of Park Ridge to obtain judicial review of decisions of its board of appeals stems from this latter language, we

do not consider it necessary to determine whether it is a person aggrieved within the meaning of the statute. Were it necessary to determine this question we would conclude that in the situation presently before us Park Ridge is aggrieved. The very basis of zoning is the benefit and best interests of the community, and the special injury rule, advanced by All American as the test for who is a person aggrieved, does not apply to the municipality in the same way that it applies to a private citizen. See *Drueck v. Peterson*, 340 Ill.App. 164.

■■ We next consider All American's contention that Park Ridge failed to seek judicial review within the time required by statute. Section 4 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 267), provides that a party seeking judicial review of an administrative decision must file its complaint within 35 days from the date of the decision sought to be reviewed. In the present case, three property owners in Park Ridge filed a timely complaint seeking review of the decision of the board of appeals and named Park Ridge as one of the defendants. Thereafter the trial court permitted realignment of Park Ridge as a plaintiff and granted it leave to adopt the complaint filed by the property owners. Section 12 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 275), provides that the court shall have, among others, the power "to dismiss the parties or to realign parties plaintiffs and defendants." There is no requirement that realignment occur within the 35 day period. We therefore conclude that the action of the trial court was proper and that Park Ridge's status as a plaintiff is not undermined by the fact that it was realigned more than 35 days after the decision of the board of appeals.

Finally we consider All American's contention that the findings made by the board were adequate and based upon substantial evidence and that the trial court erred in reversing the board's decision.

All American argues that the findings of the board were based upon substantial evidence. The trial court concluded that there was no proper proof that the property could not yield a reasonable return if used in accordance with the restrictions and that All American's plight was due to unique circumstances.

■■ With respect to the former, the record reveals that All American purchased the property at a price of approximately $500,000. Ralph Martin, who testified for All American, and Frederick Carlson, who testified for the objectors, agreed that the present market value of the property was approximately $300,000. Martin testified that $5.50 to $5.75 per square foot of rental space could be earned by a building which would conform to the height limitation while the proposed seven story building would earn $7.50 per square foot. Carlson testified that a conforming

structure would earn $6.50 per square foot. With the cost of the proposed building set at $3.3 million, it was estimated that a conforming structure would result in a return to All American on its investment of between 7.2 and 8.1 per cent. Based upon this record, we believe that the trial court was correct in its conclusion. All American was aware when it purchased the property that Park Ridge zoning restrictions prohibited the construction of any building over 40 feet in height. The fact that it paid more for the vacant lot than it was worth does not establish a hardship in relation to zoning. As stated in *River Forest State Bank and Trust Co. v. Zoning Board of Appeals of Maywood*, 34 Ill.App.2d 412:

> "A 'particular hardship' does not mean one that is self-imposed, or that a piece of property is better adapted for a forbidden use than for the one which is permitted, or that a variation would be to the owner's profit or advantage or convenience."

■■ With respect to the latter, the only material evidence on the question of uniqueness was that given by Ralph Martin, the zoning expert who testified for All American. It was his opinion that the subject property was unique because it is across from an area which is entirely developed with high rise buildings. The area to which he referred is that south of Higgins Road, and is located in the City of Chicago. The record reveals that immediately north of the subject property is an extensive area of single family residences. To the east is a small shopping center of one story buildings and to the west a two story town house development. None of these buildings exceeds 40 feet in height. Thus the evidence did not establish that the plight of All American was unique when compared to other property owners in the area, and we agree with the trial court that it was insufficient to support the board's finding.

Moreover, under section 11-13-4, a variation may be permitted only if the evidence establishes that:

> "(1) the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations in that zone; and (2) the plight of the owner is due to unique circumstances; and (3) the variation, if granted, will not alter the essential character of the locality."

■■ In the present case, authority to grant variations was in the board of appeals, and therefore the burden was on All American to establish that all of the requirements of the statute were present.

In determining whether to grant the variation requested by All American the board of appeals made five findings of fact. Finding (1) describes the size, area, present use and purchase price of the subject property. Finding (2) describes uses in the area surrounding the subject property. Findings (3), (4) and (5) state verbatim the language of

section 11-13-4 quoted in the preceding paragraph and contain no other information. Aside from the language of section 11-13-4, no reason for granting the variation is stated.

In *Lindburg v. Zoning Board of Appeals of Springfield,* 8 Ill.2d 254, the Illinois Supreme Court considered the sufficiency of findings of fact similar to those in the present case. The court concluded:

"The requirement of the statute is not met by parroting the highly generalized statutory phrases, 'practical difficulties' and 'particular hardship'."

The Appellate Court in *Vahle v. Zoning Board of Appeals of Canton,* 97 Ill.App.2d 165, stated the reason for findings of fact:

"[I]t is the application of the statutory standards to the reasons or findings of fact which determine[s] the appropriateness of the result."

■■ That findings of fact such as the ones in the present case are insufficent to form the basis for granting a zoning variation has been frequently recognized. (*Blair v. Zoning Board of Appeals of Chicago,* 84 Ill.App.2d 159; *Harber v. Zoning Board of Appeals of Chicago,* 84 Ill.App.2d 94.) We believe that the trial court was correct in concluding that the findings in the present case did not meet the requirements of the statute and hence could not be the basis of a variation.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.