Present:  ALL THE JUSTICES

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 032390              November 5, 2004

BOARD OF ZONING APPEALS OF
FAIRFAX COUNTY, ET AL.

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  Leslie M. Alden, Judge

     The primary issue we consider in this appeal is whether a

county has standing to challenge the decision of a board of

zoning appeals.

                              I.

     James L. Hickerson owns a parcel of land in Fairfax

County.  The parcel is subject to a zoning classification of

R-3 District (Residential District, Three Dwelling

Units/Acre).  The minimum lot requirement in this zoning

classification is 10,500 square feet, and the minimum lot

width requirement is 80 feet.  A single-family dwelling is on

the parcel which contains 24,449 square feet of land in excess

of the R-3 zoning classification requirement for a single-

family dwelling.

     In 1936, a former owner subdivided the parcel from a

larger tract of land.  The subdivision was not created in

compliance with the County's subdivision ordinance in effect

in 1936 that required the County to approve the metes and bounds description of the subdivision.

Hickerson acquired his parcel in 1964. In 2002, he desired to subdivide that parcel into two lots, but one of the proposed lots would have a minimum lot width of 20 feet, in violation of the County's zoning ordinance.

Hickerson sought a variance from the Board of Zoning Appeals (BZA) that would permit him to subdivide his parcel into the two lots and construct a house on each lot. He essentially asserted in his application that the strict application of the zoning ordinance would produce "undue hardship" because the exceptional size of his parcel precludes the maximum use of his land as provided by the R-3 zoning classification, and he could not construct two new homes on the proposed lots without a variance.

The BZA granted the requested variance on the basis that the request satisfied the requisites enumerated in Code § 15.2-2309(2). The Board of Supervisors filed a petition for a writ of certiorari in the circuit court challenging the decision of the BZA. The circuit court held that the Board of Supervisors had standing to challenge the decision of the BZA, but the court approved the BZA's decision to grant the variance. The Board of Supervisors appeals the circuit court's judgment approving the BZA's decision, and the BZA and

2

Hickerson assign cross-error to that portion of the court's judgment that concluded that the Board of Supervisors has standing to maintain this proceeding.

II.

A.

Code § 15.2-2314 states in relevant part:

"Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any aggrieved taxpayer or any officer, department, board or bureau of the locality, may file with the clerk of the circuit court for the county or city a petition specifying the grounds on which aggrieved within 30 days after the final decision of the board."

The BZA and Hickerson assert that the County lacks standing to challenge the decision to grant the variance because the County is not aggrieved within the intendment of this statute. We disagree.

Pursuant to Code § 15.2-2314, any person who is aggrieved by any decision of a BZA may file a petition with a circuit court challenging that BZA decision. The word "person" includes legal entities and, therefore, a local governing body qualifies as a "person" with authority to petition the circuit court to challenge a BZA decision. Code § 1-13.19. The BZA and Hickerson do not dispute that the Board of Supervisors is a person within the meaning of this statute.

3

Code § 15.2-1401 states in relevant part that "all powers granted to localities shall be vested in their respective governing bodies."  Code § 15.2-2240, which requires localities to adopt ordinances regulating subdivision and development of land, states:  "The governing body of every locality shall adopt an ordinance to assure the orderly subdivision of land and its development."  Code § 15.2-2280 authorizes localities to enact zoning ordinances that regulate, restrict, prohibit, or determine the use of land, buildings, structures or other premises:

> "Any locality may, by ordinance, classify the territory under its jurisdiction or any substantial portion thereof into districts of such number, shape and size as it may deem best suited to carry out the purposes of this article, and in each district it may regulate, restrict, permit, prohibit, and determine the following:
> "1.  The use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses;
> "2.  The size, height, area, bulk, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures;
> "3.  The areas and dimensions of land, water, and air space to be occupied by buildings, structures and uses, and of courts, yards, and other open spaces to be left unoccupied by uses and structures, including variations in the sizes of lots based on whether a public or community water supply or sewer system is available and used; or
> "4.  The excavation or mining of soil or other natural resources."

Code § 15.2-2308 requires that every locality that has enacted a zoning ordinance establish a board of zoning appeals.

4

As demonstrated by these statutes, a board of supervisors has a strong interest in the proper and uniform application of its zoning ordinances. The United States Supreme Court has observed, and we agree, that a local government's exercise of its zoning authority is "one of the most essential powers of government, one that is the least limitable." Hadacheck v. Sebastian, 239 U.S. 394, 410 (1915). Without question, improper decisions of a board of zoning appeals can impede the uniform and proper application of zoning ordinances and the grant of improper variances can undermine and even destroy the very goals that the zoning classifications were enacted to achieve.

Code § 15.2-1404 grants a local governing board the broad power to institute actions in its own name with regard to "all matters connected with its duties." One legislative purpose manifested in this statutory grant is to enable the local governing body to ensure compliance with its legislative enactments, including its zoning ordinance. If the local governing body does not have such authority, that body's legislative acts could be effectively nullified by a BZA, and the governing body would be powerless to take action to require compliance with its own ordinances. Moreover, a holding that would preclude a board of supervisors from seeking judicial review of a decision of a board of zoning

5

appeals would enable a board of zoning appeals to exercise power arbitrarily.  Certainly, the General Assembly did not contemplate such an untenable result.

We hold that a board of supervisors is an aggrieved person within the meaning of Code § 15.2-2314, and thus has standing to challenge a decision of a BZA.  This holding is consistent with the majority rule adopted by our sister states.

The Supreme Court of Alabama construed a statute substantially similar to Code § 15.2-2314, and that court concluded that a governing body has standing to challenge the decision of its zoning board.  That court observed:

> "A zoning board acts independently of the municipal council that enacts the [zoning] ordinances . . . . Additionally . . . the improper granting of variances will not necessarily be challenged by many aggrieved parties because they might not have the resources for litigation.  Without standing to challenge the arbitrary granting of variances, the municipality is unable to prevent the improper application of its ordinances."

Ex parte City of Huntsville, 684 So.2d 123, 126 (Ala. 1996).

The Supreme Court of Nevada considered whether a municipality was aggrieved by a decision of a zoning board and, therefore, had standing to appeal.  Concluding that a municipality has standing, the court noted:

> "Most courts considering the issue have held a municipality may be an aggrieved person within the meaning of statutes authorizing such a person to

6

institute proceedings to review a decision of a
board of adjustment. . . .  We agree with this
authority and believe a municipality has a vested
interest in requiring compliance with its land use
decisions."

City of Reno v. Harris, 895 P.2d 663, 666 (Nev. 1995).

The Supreme Court of Rhode Island has considered whether a municipality has standing to challenge a zoning board's decision.  The court, construing a statute substantially similar to Virginia Code § 15.2-2314, concluded that a municipality can be an aggrieved person so as to have standing because "'aggrievement' in the public sense occurs whenever there is a threat to the very real and legitimate interest which the general public has in the preservation and maintenance of the integrity of the zoning laws."  City of East Providence v. Shell Oil Co., 290 A.2d 915, 917-18 (R.I. 1972).

The Court of Appeals of Idaho has also considered whether a municipality is an aggrieved person who has standing to appeal a decision of its own zoning appeals board.  The court stated:

"Although Idaho Code § 67-5215 does not
specifically authorize a municipality's right to
appeal a decision of its own Zoning Appeals Board, a
municipality or town may be deemed to be an
'aggrieved person' within the meaning of that
section. . . .  Clearly the city, being interested
in the maintenance and development of the city and
the property contained therein, has an interest in
the real property which may be adversely affected by

7

the wrongful issuance of a variance by the Zoning Appeals Board."

City of Burley v. McCaslin Lumber Co., 693 P.2d 1108, 1110 (Idaho Ct. App. 1984). Accord Reichard v. Zoning Board of Appeals of the City of Park Ridge, 290 N.E.2d 349, 353 (Ill. App. Ct. 1972); River Oaks-Hyman Place Homeowners Civic Association v. City of New Orleans, 281 So.2d 293, 294-95 (La. Ct. App. 1973); County Commissioners of Carroll County v. Gross, 483 A.2d 755, 759 (Md. 1984); Crosby v. Town of Belgrade, 562 A.2d 1228, 1231 (Me. 1989); Commco, Inc. v. Amelkin, 465 N.E.2d 314, 318 (N.Y. 1984); Perelman v. Yeadon Borough Board of Adjustment, 18 A.2d 438, 439 (Pa. Super. Ct. 1941). But see, e.g., City of East Point v. Crosby & Stephens, Inc., 160 S.E.2d 839, 841 (Ga. Ct. App. 1968); Kasper v. Coury, 555 N.E.2d 310, 313 (Ohio 1990); Sabourin v. Town of Essex, 505 A.2d 669, 670 (Vt. 1985).

Legal commentators have recognized that courts in many states have held that governing bodies are aggrieved parties who have standing to challenge decisions of boards of zoning appeals. For example, one commentator has stated:

> "A great many state statutes . . . contain language similar to that in Colorado legislation, providing that '[an] appeal may be taken by any person aggrieved or by an officer, department, board, or bureau of the municipality.' This language is usually understood to allow a local government to challenge a decision of its own board of appeals. Even where the language has been

removed from the statute, a local government may qualify as an aggrieved. The specific language of enabling statutes aside, many courts agree that a municipality may qualify as an aggrieved party for standing."

E. C. Yokley, 4 Zoning Law and Practice § 24-4 (Rev. 4th ed. 2003). Additionally, another commentator has explained:

"In some states, it is held that aggrievement in a public sense occurs whenever the action of the board of appeals appears to threaten the preservation and integrity of the zoning plan, for instance, by the wrongful grant of a special permit. Thus, the municipality may challenge the zoning board's grant of a variance or special exception permit or a court decision thereon."

Arden H. Rathkopf and Daren A. Rathkopf, Rathkopf's The Law of Zoning and Planning, § 63:24 (2002).

### B.

Hickerson and the BZA contend that our decision in Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 344 S.E.2d 899 (1986), requires dismissal of the Board of Supervisors' appeal. We disagree.

In Virginia Beach Beautification Comm'n, we did not consider whether a board of supervisors has standing to challenge a decision of the board of zoning appeals. Additionally, we did not consider whether a board of supervisors is an aggrieved party within the meaning of Code § 15.2-2314. Rather, we considered whether a non-stock corporation with a membership of over 400 persons and

9

organizations with a stated goal "to help make and keep Virginia Beach one of the most beautiful cities in the state" was aggrieved within the intendment of former Code § 15.1-497, the precursor to Code § 15.2-2314. Id. at 418-19, 344 S.E.2d at 902.

Virginia Beach Beautification, which owned no real property in Virginia Beach, and paid no taxes, attempted to challenge the Board of Zoning Appeals' decision that granted Bonnie Road Hotel Associates a height and setback variance to permit construction of a free-standing sign. We held that the Virginia Beach Beautification Commission was not aggrieved and therefore lacked standing. We stated:

> "The term 'aggrieved' has a settled meaning in Virginia when it becomes necessary to determine who is a proper party to seek court relief from an adverse decision. In order for a petitioner to be 'aggrieved,' it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. . . . The petitioner 'must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest.' . . . Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. The word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally."

Id. at 419-20, 344 S.E.2d at 902-03.

Unlike the commission in Virginia Beach Beautification Comm'n, the Board of Supervisors in this appeal has an immediate and substantial interest in this litigation. In contrast to the commission in Virginia Beach Beautification Comm'n, the Board of Supervisors' interest in this case is real and immediate because, as we will discuss below, the BZA granted the variance that is the subject of this litigation in violation of the County's zoning ordinance and Code § 15.2-2309(2), which prescribe the conditions that must be satisfied before a variance may be granted. The issuance of variances in disregard of the County's zoning ordinances and Virginia statutes has a direct impact upon the County because such acts will vitiate the County's zoning scheme. And, unlike the commission in Virginia Beach Beautification Comm'n, the Board of Supervisors has a strong interest in the valid implementation of its zoning authority, which is a police power conferred upon the County by the Commonwealth.

We note that our holding is consistent with this Court's decision in Wolfe v. Board of Zoning Appeals of Fairfax County, 260 Va. 7, 532 S.E.2d 621 (2000). In Wolfe, we considered, among other things, whether a zoning administrator could file a petition for certiori to the circuit court pursuant to Code § 15.2-2314 without the authorization of a board of supervisors. We held that Code § 15.2-2286(A)(4)

11

permits a zoning administrator to pursue an appeal on behalf of a board of supervisors only when the board has authorized such action. We explained: "[T]here is imposed upon 'any officer' taking action under Code § 15.2-2314 the requirement that the action be on behalf of the local governing body." Id. at 20-21, 532 S.E.2d at 628.

We acknowledged in Wolfe that the General Assembly authorized a zoning administrator to challenge a decision of a board of zoning appeals if the board of supervisors directs the zoning administrator to file a petition for writ of certiori in the circuit court. Certainly, if a zoning administrator, who is an agent of a board of supervisors, has standing to challenge a decision of a board of zoning appeals, then the board of supervisors, which is the principal, has the same authority. It is a fundamental rule of agency law that an agent does not have greater authority than its principal.

### III.

The Board of Supervisors contends that the BZA lacked the authority to grant the challenged variance because Hickerson failed to demonstrate that he had incurred a hardship required by Code § 15.2-2309. Responding, Hickerson and the BZA contend that Hickerson incurred a hardship. They assert that: "The use of Mr. Hickerson's residentially zoned lot is severely and unreasonably restricted by the fact that, through

12

no fault of Mr. Hickerson's, it was not validly created in 1936 . . . . The County would not issue a building permit for any improvement of the lot or house on the lot until the lot was made valid. . . . Without permits, neither Mr. Hickerson nor his transferees or heirs may add or modify plumbing, upgrade the electrical system to modern safety standards, add central heating or air conditioning, make any structural modifications, for safety reasons or otherwise, nor make additions to the 1936 structure."

We disagree with Hickerson and the BZA. The General Assembly has given boards of zoning appeals the following power:

> "To authorize upon appeal or original application in specific cases such variance as defined in § 15.2-2201 from the terms of the ordinance as will not be contrary to the public interest, when, owing to special conditions a literal enforcement of the provisions will result in unnecessary hardship . . . ."

Code § 15.2-2309(2). Additionally, the General Assembly has prescribed the following standards that govern the power of a board of zoning appeals to grant variances:

> "No such variance shall be authorized by the board unless it finds:
> "a. That the strict application of the ordinance would produce undue hardship;
> "b. That the hardship is not shared generally by other properties in the same zoning district and the same vicinity; and
> "c. That the authorization of the variance will not be of substantial detriment to adjacent

13

property and that the character of the district will not be changed by the granting of the variance."

Id.

We have recently stated that a board of zoning appeals has authority to grant variances only to avoid an unconstitutional result. Cochran v. Fairfax County Board of Zoning Appeals, 267 Va. 756, 764, 594 S.E.2d 571, 576 (2004). In Cochran, homeowners applied for variances from the applicable setback requirements so that they could build new structures on their lots, and two homeowners applied for variances from the applicable limitation on "accessory structures" that could be constructed on their property. We held the homeowners had not met the standards prescribed in Code § 15.2-2309. We explained that each of the landowners could have reconfigured their development plans to meet their goals without a variance. We stated that "[w]ithout any variances, each of the properties retained substantial beneficial uses and substantial value. The effect of the respective zoning ordinances upon them in no sense 'interfere[d] with all reasonable beneficial uses of the property, taken as a whole.' " Id. at 766, 594 S.E.2d at 577-78.

This Court also previously considered the meaning of undue hardship. In Packer v. Hornsby, 221 Va. 117, 267 S.E.2d

14

140 (1980), we held a board of zoning appeals erred in granting a variance from a setback requirement to a applicant who wished to build an extension on his home on the oceanfront. We explained that the homeowner did not experience undue hardship. We stated:

> "The applicants already ha[d] a dwelling, which they did not seek to expand for ten years, and they c[ould] enlarge the house without violating the setback requirement by adding to the west side of the structure. The evidence shows that the [homeowners] simply would prefer to expand to the east in order to have a better floor plan with a better view of the ocean."

Id. at 122, S.E.2d at 143.

Similarly, this Court held that a board of zoning appeals erred in granting a variance from a setback requirement in Board of Zoning Appeals v. Nowak, 227 Va. 201, 315 S.E.2d 221 (1984). We concluded that the applicant requesting the variance did not experience undue hardship simply because he was unable to build a home on his lot without adjusting the location of the proposed home on the lot. We explained that the homeowner had not met the undue hardship requirement imposed by the statute because his application involved

> "a situation where, as an alternative to violating the setback requirement, an applicant for a variance need only shift the position of the structure he proposes to build. Understandably, this alternative does not 'suit' the applicant. But to grant him a variance under these circumstances would bestow upon him a 'special privilege or convenience,' and this is impermissible . . . ."

15

Id. at 205, S.E.2d at 223.

Likewise, Hickerson does not experience an undue hardship. He has enjoyed the use of his home since 1964. He seeks a variance so that he can demolish the current structure on his property, subdivide his property into two lots, and erect new residential structures on each lot. His inability to subdivide his property does not constitute a hardship under the facts of this case. The effect of the zoning ordinance does not interfere "with all reasonable beneficial uses of the property, taken as a whole." Cochran, 267 Va. at 766, 594 S.E.2d at 577-78.

## IV.

In view of the above holdings, we need not consider the litigants' remaining contentions. We will affirm that portion of the circuit court's judgment that held that the Board of Supervisors is an aggrieved party and, therefore, has standing to challenge the decision of the BZA. We will reverse that portion of the circuit court's judgment that held that the BZA properly granted the variance. We will vacate the BZA's decision to grant the variance, and we will enter a final judgment in favor of the Board of Supervisors.

Affirmed in part,
reversed in part,
and final judgment.

JUSTICE KINSER, with whom JUSTICE LACY joins, dissenting.

Today, the majority concludes that, because the Board of Supervisors of Fairfax County ("Board") "has a strong interest in the proper and uniform application of its zoning ordinances," it has standing as an "aggrieved person" under Code § 15.2-2314 to file a petition for a writ of certiorari seeking reversal of a decision by the Fairfax County Board of Zoning Appeals ("BZA") granting a variance to James L. Hickerson. That "strong interest" is no different from the interest of the public generally. Thus, in my view, the majority broadens and thereby redefines the term "aggrieved person." For that reason, I cannot join the majority and respectfully dissent.

The BZA and Hickerson argue that the Board lacks standing under Code § 15.2-2314 not only because the Board is not a "person . . . aggrieved" but also because the Board is not a "board . . . of the locality" as that phrase is used in the statute. I will address both arguments respectively.

I. AGGRIEVED PERSON

In Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986), this Court defined the term "aggrieved person." We stated:

17

> In order for a petitioner to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner "must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest." Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

(Citations omitted). See also, Virginia Ass'n of Ins. Agents v. Commonwealth, 201 Va. 249, 254, 110 S.E.2d 223, 227 (1959); Nicholas v. Lawrence, 161 Va. 589, 593, 171 S.E. 673, 674 (1933). That definition has been consistently followed by this Court. See, e.g., Wilkins v. West, 264 Va. 447, 458, 571 S.E.2d 100, 106 (2002); Trustees v. Taylor & Parrish, Inc., 249 Va. 144, 151-52, 452 S.E.2d 847, 851 (1995); Vulcan Materials Co. v. Board of Supervisors, 248 Va. 18, 24, 445 S.E.2d 97, 100 (1994). I find the precedent controlling and believe the well-established definition of the term "aggrieved person" must be applied in the present case. However, the majority fails to do so.

Based on the statutory provisions authorizing the governing body of every locality to adopt zoning ordinances, see Code § 15.2-2280, and requiring a locality that has

18

enacted a zoning ordinance to establish a board of zoning appeals, see Code 15.2-2308, the majority concludes that the Board has a "strong interest in the valid implementation of its zoning authority" and that "improper decisions of [the BZA] can impede the uniform and proper application of zoning ordinances", thereby "vitiat[ing] the County's zoning scheme." This impediment, according to the majority, is an aggrievement giving the Board "an immediate and substantial interest in this litigation." But, the majority fails to explain how the impediment is "a denial of some personal or property right, . . . or imposition of a burden or obligation . . . different from that suffered by the public generally." Virginia Beach Beautification Comm'n, 231 Va. at 419-20, 344 S.E.2d at 903.

The General Assembly has stated that the purpose of zoning ordinances is to "promot[e] the health, safety or general welfare of the public." Code § 15.2-2283. Thus, the Board's interest in the proper application of its zoning ordinances is an interest shared by the public and is no different than the public's interest in the valid enforcement of such ordinances. Any imposition on this interest is a "public aggrievement." Although never clearly stated, the majority's reasoning is premised on the theory of a "public aggrievement," a concept found in some of the cases relied upon by the majority.

19

For example, in City of East Providence v. Shell Oil Co.,

290 A.2d 915 (R.I. 1972), the issue was whether the City of

East Providence had standing to appeal the decision of its

zoning board.  The pertinent statute allowed "[a]ny person or

persons . . . aggrieved by a decision of the zoning board" to

appeal to the superior court.  Id. at 917 n.2 (emphasis in

original).  Recognizing that it had already stated that the

term " 'aggrievement' may be entitled to an expanded

interpretation whenever 'the public has an interest in the

issue which reaches out beyond that of the immediate

parties,' " the court decided that, in the zoning context,

" 'aggrievement' " has "both a personal and a public sense."

Id. at 917 (quoting Buffi v. Ferri, 259 A.2d 847, 849 (R.I.

1969)).

> "Aggrievement" in the personal sense . . . calls for an
> actual and practical, as distinguished from a
> theoretical, interest in the controversy and requires a
> showing by the one claiming to be "aggrieved" that the
> use of his property will be adversely affected by the
> decision granting relief from the terms of the
> ordinance. . . . "[A]ggrievement" in the public sense
> occurs whenever there is a threat to the very real and
> legitimate interest which the general public has in the
> preservation and maintenance of the integrity of the
> zoning laws.

Id. at 918.

Similarly, the decision in Ex parte City of Huntsville,

684 So. 2d 123, 126 (Ala. 1996), was premised on the logic of

20

a "public aggrievement": "Without standing to challenge the arbitrary granting of variances, the municipality is unable to prevent the improper application of its ordinances."  See also City of Burley v. McCaslin Lumber Co., 693 P.2d 1108, 1110 (Idaho Ct. App. 1984) (city had standing to seek review of the decision of the zoning appeals board because "wrongful issuance of a variance may impede the city's ability to properly administer the provisions of its zoning ordinance"); City of Reno v. Harris, 895 P.2d 663, 666 (Nev. 1995) ("municipality has a vested interest in requiring compliance with its land use decisions"; thus the city was an aggrieved party).  However, this idea of a "public aggrievement" does not square with Virginia's previously established definition of the term "aggrieved": "a burden or obligation upon the petitioner different from that suffered by the public generally."  Virginia Beach Beautification Comm'n, 231 Va. at 419-20, 344 S.E.2d at 903.  In other words, Virginia has never recognized standing based on the notion of a "public aggrievement."  Cf. Virginia Employment Comm'n v. City of Virginia Beach, 222 Va. 728, 733, 284 S.E.2d 595, 598 (1981) (even though Virginia Employment Commission disagreed with the circuit court's decision regarding unemployment benefits, it was "not aggrieved to any greater extent than would be any other state agency, department, commission, or regulatory body

which finds itself in disagreement with a decision of a court of competent jurisdiction").

The State of Indiana has a similarly strict definition of the term "aggrieved person."  See McFarland v. Pierce, 45 N.E. 706, 706 (Ind. 1897) ("denial of some personal or property right or the imposition upon a party of a burden or obligation").  In accordance with that definition, the Indiana Court of Appeals rejected the idea of a "public aggrievement."  See Metropolitan Dev. Comm'n of Marion County v. Cullison, 277 N.E.2d 905, 908 (Ind. Ct. App. 1972).  The court stated that providing aggrieved persons the right to judicial review is not the same as providing those aggrieved persons with "an official representative to assert that right for their benefit."  Id.

Moreover, the majority opinion opens the door to standing based on a "public aggrievement" in other areas of the law.  After this ruling, where the General Assembly has created a right of appeal from the enforcement of any ordinance, whichever locality promulgated the ordinance will have standing to appeal as a representative of the public.  For example, the provisions of Code § 15.2-619 require a board of supervisors to establish a board of real estate review and equalization to review all real estate assessments and hear appeals from "any person aggrieved."  Code § 15.2-619.  The

statute provides that "[a]ny person aggrieved by any reassessment or action of the board of real estate review and equalization may apply for relief to the circuit court of the county." Id.

Under the majority's reasoning in the present case, a board of supervisors could seek judicial review of a decision by the board of real estate review and equalization as a representative of the public. Both the public and a board of supervisors have an interest in preserving anticipated revenues from real estate taxes. It seems unlikely that the General Assembly created such an avenue for judicial relief for anyone other than the individual owner of the real estate against which the tax was assessed. Similarly, as regards variances, the General Assembly did not create such an avenue of judicial relief for any entity other than the person or persons suffering "a denial of some personal or property right . . . or imposition of a burden or obligation . . . different from that suffered by the public generally." Virginia Beach Beautification Comm'n, 231 Va. at 419-20, 344 S.E.2d at 903.

To support its position, the majority also turns to the provisions of Code § 15.2-1404. The majority concludes that "[o]ne legislative purpose manifested in this statutory grant is to enable the local governing body to ensure compliance with its . . . zoning ordinance." However, this statute

23

merely provides that a locality "may sue or be sued in its own name in relation to all matters connected with its duties." I find nothing in this statute of general application that makes a local governing body an "aggrieved person" within the meaning of Code § 15.2-2314, a statute of specific application governing an appeal from the decision of a board of zoning appeals. See Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979) ("when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict the later prevails").

In the same context, the majority argues that precluding the Board from appealing the BZA's decision "would enable [the BZA] to exercise power arbitrarily." I do not agree with that statement. A holding in this case that the Board does not have standing would not allow the BZA to act arbitrarily. The very statute at issue, Code § 15.2-2314, provides judicial review for "aggrieved persons" and other enumerated entities. Thus, any arbitrary decision by the BZA is subject to check upon judicial review.

The majority cites the legal commentary and case law that find a locality has standing to appeal the decision of its own board of zoning appeals. It is true that some states hold

24

that a municipality can be an "aggrieved person";[1] however, other states grant standing under different statutory language,[2] and still other states find that a locality does not have standing.[3]  In other words, a majority of the states find that a locality has standing, but there is no majority of states that find such standing based on the "aggrieved person" statutory language.

For these reasons, I conclude that the Board did not have standing as an "aggrieved person" under Code § 15.2-2314 to

[1] Ex parte City of Huntsville, 684 So. 2d 123, 126-27 (Ala. 1996); City of Burley v. McCaslin Lumber Co., 693 P.2d 1108, 1110-11 (Idaho Ct. App. 1984); Crosby v. Belgrade, 562 A.2d 1228, 1231 (Me. 1989); City of Reno v. Harris, 895 P.2d 663, 665-66 (Nev. 1995); Town of Mesilla v. City of Las Cruces, 898 P.2d 121, 124 (N.M. Ct. App. 1995); Perelman v. Yeadon Borough Bd. of Adjustment, 18 A.2d 438, 439 (Pa. Super. Ct. 1941); City of East Providence v. Shell Oil Co., 290 A.2d 915, 918 (R.I. 1972).

[2] J & L Diversified Enters. v. Municipality of Anchorage, 736 P.2d 349, 351 n.1 (Alaska 1987); City and County of Denver v. Board of Adjustment, 505 P.2d 44, 45 (Colo. Ct. App. 1972); Board of County Comm'rs v. Board of Zoning Appeal, 761 So. 2d 1217, 1218-19 (Fla. Dist. Ct. App. 2000); Reichard v. Zoning Bd. of Appeals of Park Ridge, 290 N.E.2d 349, 352 (Ill. App. Ct. 1972); River Oaks-Hyman Place Homeowners Civic Ass'n. v. City of New Orleans, 281 So. 2d 293, 294-95 (La. Ct. App. 1973); Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 695 N.E.2d 650, 652 (Mass. 1998).

[3] City of East Point v. Crosby & Stephens, Inc., 160 S.E.2d 839, 841 (Ga. Ct. App. 1968); Metropolitan Dev. Comm'n v. Cullison, 277 N.E.2d 905, 908 (Ind. Ct. App. 1972); Kasper, Zoning Inspector v. Coury, 555 N.E.2d 310, 313 (Ohio 1990); Township of Dover v. Board of Adjustment, 386 A.2d 421, 425 (N.J. Super. Ct. App. Div. 1978); Sabourin v. Town of Essex, 505 A.2d 669, 670 (Vt. 1985).

seek judicial review of the decision by the BZA.  The Board did not suffer any "burden or obligation . . . different from that suffered by the public generally."  <u>Virginia Beach Beautification Comm'n</u>, 231 Va. at 419-20, 344 S.E.2d at 903. I am not willing to expand the well-established definition of the term "aggrieved person" to include the concept of a "public aggrievement."[4]  To do so creates "a result the [General Assembly] has apparently decided is either unnecessary or undesirable."  <u>Metropolitan Dev. Comm'n</u>, 277 N.E.2d at 908.

## II. BOARD OF THE LOCALITY

In addition to providing an appeal for an "aggrieved person," the provisions of Code § 15.2-2314 also allow "any aggrieved taxpayer or any officer, department, board or bureau of the locality" to appeal a decision by a board of zoning appeals to the circuit court for the city or county.  Although not addressed by the majority, the question with regard to this part of the statute is whether the phrase "board . . . of the locality" includes a board of supervisors.

---

[4] The fact that a zoning administrator can pursue an appeal on behalf of a board of supervisors pursuant to Code § 15.2-2286(A)(4), <u>see</u> <u>Wolfe v. Board of Zoning Appeals of Fairfax County</u>, 260 Va. 7, 20, 532 S.E.2d 621, 628 (2000), does not change the analysis.  The power of a zoning administrator to do so is based on a specific grant of

26

General rules of statutory construction require that this Court determine the intent of the General Assembly based on the words contained in the statute, unless a literal construction would create an absurd result.  When the language of the statute is plain and unambiguous, the Court must apply the plain meaning of the language.  Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001); Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001).

Whether the phrase "board . . . of the locality" includes a board of supervisors is not apparent on the face of Code § 15.2-2314.  The phrase is not defined in that section or in any other provision of Chapter 22 of Title 15.2 of the Code of Virginia, styled "Planning, Subdivision of Land and Zoning." A review of Title 15.2 shows that, when the General Assembly intended to refer to a board of supervisors it generally used the phrases "board of supervisors" or "governing body."[5]  Where the Code refers to a board of supervisors simply as a "board," it does so by explicitly giving the word that meaning, see, e.g. Code §§ 15.2-402, -502, -602, -802, or by clear use in context, see, e.g. Code §§ 15.2-1410, -1414.2, -1420.  This

authority from the General Assembly and, contrary to the majority, does not implicate principles of agency law.

[5] Code § 15.2-102 defines "governing body" as "the board of supervisors of a county, council of a city, or council of a town, as the context may require."  That section also defines "board of supervisors" as "the governing body of a county."

27

pattern of identifying a board of supervisors supports the proposition that the General Assembly did not intend to include a board of supervisors within the phrase "board . . . of the locality."

Excluding the board of supervisors from those governmental entities identified in Code § 15.2-2314 for standing purposes does not render the phrase "board . . . of the locality" meaningless. Title 15.2 recognizes a number of "board[s] . . . of the locality." For example, Code § 15.2-1500 directs localities to provide for the organization of "all departments, offices, boards, commissions and agencies of government." (Emphasis added.) In addition to the authority to create such "boards" as needed, governing bodies are required to establish certain boards, such as boards of social services. See, e.g. Code §§ 15.2-412, -527, -626, -629.

Finally, construing the word "board" to encompass "board of supervisors" would lead to the inequitable and absurd result of conferring standing on a board of supervisors but not on a town or city council. I decline to attribute to the General Assembly such disparate and unjustified treatment of local governing bodies. Accordingly, I conclude that the phrase "board . . . of the locality" does not include a board of supervisors and, therefore, this provision in Code § 15.2-2314 does not confer standing on the Board.

28

## III. CONCLUSION

For these reasons, I conclude that the circuit court erred in finding that the Board had standing to appeal the BZA's decision to grant Hickerson a variance. I would therefore reverse the circuit court's judgment on the standing issue and dismiss the Board's petition for a writ of certiorari.