2024 IL App (4th) 230726

NO. 4-23-0726

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| DAVID ERICKSON, NANCY ERICKSON, GARY PETERSON, PENNY PETERSON, BRETT SWANSON, KRISTA SWANSON, MIKE LUNDEEN, CHERI LUNDEEN, MARK COMPTON, PATTY COMPTON, DEAN NELSON, SHAWN CISNA, LISA CISNA, BOB HROZIENCIK, NANCY HROZIENCIK, JASON LIBBY and HEIDI LIBBY, Plaintiffs-Appellants and Cross-Appellees, v. KNOX COUNTY WIND FARM LLC, an Illinois Limited Liability Company; KNOX COUNTY, ILLINOIS; and THE KNOX COUNTY ZONING BOARD OF APPEALS, Defendants-Appellees and Cross-Appellants. | Appeal from the Circuit Court of Knox County No. 20MR55 Honorable William A. Rasmussen, Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Presiding Justice Cavanagh and Justice DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1    In March 2020, defendant, Knox County Wind Farm, LLC, an Illinois Limited Liability Company (KCWF), filed an application with defendant Knox County Zoning Board of Appeals (Zoning Board) for a conditional use permit and a height variation over the 500 feet limit for wind turbines under the Knox County Wind Energy Ordinance (Wind Energy Ordinance) (Knox County Wind Energy Ordinance § 1.10) in order to construct and operate a wind energy farm (the project) in defendant Knox County. After a hearing, the Zoning Board

approved the variation and recommended approval of the conditional use permit. The Knox County Board (County Board) ultimately approved the conditional use permit. Plaintiffs—David Erickson, Nancy Erickson, Gary Peterson, Penny Peterson, Brett Swanson, Kristin Swanson, Mike Lundeen, Cheri Lundeen, Mark Compton, Patty Compton, Dean Nelson, Shawn Cisna, Lisa Cisna, Bob Hroziencik, Nancy Hroziencik, Jason Libby, and Heidi Libby, who all resided in the area affected by the project—filed a complaint seeking review of the conditional use permit and variation, a declaratory judgment, and injunctive relief.

¶ 2        In their operative complaint, plaintiffs alleged the following counts. Count I alleged the County's approval of the conditional use permit violated procedural due process when plaintiffs had little time to prepare for the hearing and the Zoning Board limited their ability to call expert witnesses. Count II alleged the conditional use permit violated plaintiffs' substantive due process rights when it was based on models for wind turbines and locations that might differ from the final plan and the approval of a preliminary site plan violated plaintiffs' procedural due process rights because it allowed for unknown permit officers to approve the final plan. Count III alleged the County's approval of the variation violated section 5-12009 of the Counties Code (55 ILCS 5/5-12009 (West 2020)) and section 10.5 of the Knox County Zoning Resolution (Knox County Zoning Resolution § 10.5 (eff. Sept 29, 2010)) because the Zoning Board did not issue findings of fact when the variation was approved. Count IV alleged the variation was against the manifest weight of the evidence under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)) because KCWF failed to sufficiently show practical difficulties or a particular hardship to justify granting the variation as required by section 5-12009 of the Counties Code. Count V alleged the trial court should enjoin the issuance of building permits. Defendants moved to dismiss.

¶ 3        The trial court initially dismissed count I with prejudice, finding plaintiffs were provided with timely notice, a meaningful opportunity to cross-examine witnesses, and a meaningful opportunity to be heard. The court also dismissed count III with prejudice, finding plaintiffs failed to show written findings of fact were required prior to or simultaneous with the variation decision and failed to show any specific harm as a result of written findings of fact being issued after the variation was approved. The court further dismissed count V without prejudice because it was not ripe for adjudication when the project was not yet at the building-permit stage.

¶ 4        Defendants filed motions for summary judgment on the remaining counts. As to count IV, defendants initially alleged the trial court lacked jurisdiction because plaintiffs failed to provide notice of the action to all of the people who testified or provided written comments at the administrative hearing, as required by section 3-107(c) of the Administrative Review Law (735 ILCS 5/3-107(c) (West 2020)). The court denied the motion, finding the notice requirement in section 3-107(c) was mandatory but not jurisdictional. The court required defendants to provide notice as required by section 3-107(c) and allow those individuals 30 days to intervene in the action if they wished to do so.

¶ 5        During discovery, plaintiffs filed a motion to compel production of pdf files of data contained in studies KCWF prepared for the project, arguing some data provided was in a format plaintiffs could not read. Plaintiffs also took issue with defendants' answers to interrogatories. KCWF replied it had provided all materials and was unable to convert specialized files to pdf format. KCWF also stated the answers to interrogatories were already included in the administrative record. The trial court denied the motion. Following discovery, the court granted defendants' motion for summary judgment on the merits and dismissed counts II

and IV, stating the order was final and appealable on all remaining counts and the case was closed. The court did not expressly find there was no just reason for delaying either enforcement or appeal or both, as required by Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 6    On appeal, plaintiffs contend the trial court erred in (1) denying their motion to compel, (2) dismissing counts I and III, and (3) granting summary judgment on counts II and IV. Plaintiffs do not challenge the court's dismissal of Count V without prejudice. On cross-appeal, defendants contend the court lacked jurisdiction over count IV.

¶ 7    We determine we have jurisdiction over the appeal and count IV. We further conclude the trial court properly denied plaintiffs' motion to compel, properly dismissed counts I and III, and properly granted summary judgment on counts II and IV. Accordingly, we deny defendants' cross-appeal and affirm.

¶ 8                    I. BACKGROUND

¶ 9    On March 2, 2020, KCWF filed an application for a conditional use permit and height variation to build a wind energy farm in a primarily agricultural area of Knox County. Plaintiffs contend they did not receive notice of the scheduled hearing on the matter until April 16, 2020, and did not receive a copy of the application until April 17 and 22, 2020. The record indicates the Knox County Zoning Office was closed between April 16 and April 22, 2020, due to COVID-19 restrictions. On April 28 and 29, 2020, and May 6, 2020, the Zoning Board held a hearing on the application.

¶ 10    On April 28, 2020, at the beginning of the hearing, the administrative hearing officer noted plaintiffs' counsel had submitted exhibits and a memorandum of law concerning due process. Plaintiffs' counsel also sought a continuation of the hearing. The hearing officer noted many of the exhibits had been submitted that afternoon and stated, "I don't believe there's

- 4 -

been a due process violation at this point, and I think that frankly submitting documents at the 11th hour can't be used to make such a claim." When asked if counsel would be ready to present exhibits and witnesses the next day, plaintiffs' counsel stated, "Tomorrow we will be ready to present some witnesses, we will do our best to cross examine but we will not be able to present all our witnesses tomorrow." Plaintiffs' counsel noted he would continue to file exhibits as the matter proceeded forward, stating plaintiffs received notice in just the past 10 days. The hearing officer stated 15-days' notice was required by statute and noted the matter had "been on file for quite some time." When plaintiffs' counsel asked about the timeframe for the hearing the next day, the hearing officer stated, "[T]here is necessarily no restriction on how long that lasts. I think here what we'll do is we'll be reasonable, if another day is needed it will be continued again."

¶ 11 Michael Cressner, the director of development for Orion Renewable Energy Group LLC (Orion), testified KCWF was a subsidiary of Orion. Using a Power Point demonstration, Cressner testified about Orion, the history of its renewable energy projects, and the project's anticipated benefits to the county, state, and landowners. Cressner also described milestones achieved up to that date, such as obtaining landowner agreements, installing meteorological towers, and executing various agreements, including executing an agricultural impact mitigation agreement (AIMA) with the Illinois Department of Agriculture.

¶ 12 Cressner testified about the project's design, which would include approximately 60 wind turbines; its compliance with the Wind Energy Ordinance; and the location of project facilities. Cressner stated, in addition to requirements of the Wind Energy Ordinance, that wind turbines would be located no closer than a half mile away from any municipal boundary and no closer than a quarter mile away from all residences. The project was also designed to minimize

shadow flicker caused by the turbines to a maximum of 30 hours in a typical year at nearby residences. The project further recognized the importance of reducing nighttime lighting. Thus, if permitted by the Federal Aviation Administration (FAA), the project would implement systems to reduce aircraft-obstruction lighting. Cressner also testified the project would not exceed the Illinois Pollution Control Board (IPCB) standards for sound emissions.

¶ 13 Additionally, Cressner testified about the project's anticipated financial benefits to the county, including an approximately $170 million capital investment in the county; the creation of over 200 construction jobs; the creation of 6-to-10 full-time, long-term jobs over the life of the project; road improvements; long-term local property tax revenue, benefiting emergency services and schools; and significant payments to local landowners.

¶ 14 Counsel for KCWF, using the same Power Point demonstration, addressed the need for the requested height variation, stating KCWF sought an increase in the Wind Energy Ordinance's height limitation from 500 feet to 600 feet for the height of the wind turbines. Counsel stated, since the County's enactment of the Wind Energy Ordinance, significant upgrades and improvements to wind turbine technology allowed for taller turbines, which were more efficient and enabled wind projects to generate the same amount of energy using fewer turbines. Counsel further stated, in today's energy market, these improvements to wind-turbine technology have rendered turbines that are taller than 500 feet more economically viable than older, shorter turbines. The Power Point demonstration was entered into evidence. Extensive documents concerning the project, sound and shadow flicker modeling, and maps of proposed turbine locations were also admitted into evidence.

¶ 15 On cross-examination, Cressner admitted studies prepared for the project assumed a turbine height of 550 feet, but the project might actually use turbines up to 600 feet, which

would also have longer blades. Cressner stated the project was not limited to a particular model of turbine, and it was possible the project could use a turbine that was not yet on the market at the time of the hearing. Cressner also testified a map showing turbine locations depicted proposed locations and stated the application was requesting to place the turbines anywhere on the properties as long as they met design criteria, IPCB regulations, and required setbacks. Cressner indicated KCWF would be providing the County with the final layouts of the project. Cressner admitted a 600-foot wind turbine possibly would provide a better financial rate of return than a 500-foot turbine.

¶ 16       Andrew Lines, a commercial real estate appraiser, testified he studied sales of properties near other Illinois wind farms, had reviewed a number of studies published by other real-estate experts related to the sale of properties near wind farms, and had compiled interviews of Illinois township assessors working with wind farms. Lines found there was no consistent negative impact to property values that could be directly attributed to proximity to wind farms.

¶ 17       Rebecca Schmitt, a project manager and biologist employed by Western Ecosystems Technology, testified about wildlife surveys and risk assessment. Schmitt stated KCWF was following federal guidelines for evaluating potential impacts to wildlife and had proposed setbacks consistent with agency recommendations to avoid or minimize impacts to sensitive species.

¶ 18       Jay Haley, a mechanical engineer, conducted a shadow-flicker study for KCWF. Haley testified, to conduct the study, proposed wind turbine and house locations were placed into a computer model simulating the relative motion between the sun and earth. The model then calculated where turbine shadows would be cast for each minute of the year at one-minute intervals. If a shadow was cast on a house at the minute interval, the program would record one

minute of shadow flicker. The model included turbine locations and assumed turbine specifications, including the hub type, rotor diameter, blade width, and power curve. The model also included monthly sunshine probabilities and wind and terrain elevation data. The model included occupied dwelling locations within one and one quarter miles of wind turbines and conservatively assumed each residence was like a greenhouse with windows on all sides.

¶ 19 Haley's study assumed the turbines shown in the preliminary site plan and included in KCWF's application were approximately 550 feet tall. Haley testified the study showed residences within one and one quarter mile of any wind turbine would experience fewer than 30 hours of shadow flicker in a typical year, which he advised was a limit adopted as an acceptable value by communities across the United States.

¶ 20 On cross-examination, Haley admitted taller turbines would change the amount of shadow flicker. He also testified his study did not consider turbines being moved to locations other than those shown in the preliminary site plan. He stated KCWF would ask him to model new locations if any were moved.

¶ 21 Ken Kaliski, an engineer specializing in acoustics, prepared a sound-modeling report for the project. Kaliski testified IPCB standards, which apply to wind-energy projects, limit the sound emitted to certain classifications of land, such as residential property. Kaliski testified the project was required to comply with IPCB limits on sound emitted to residences. For his sound-modeling report, all receptors were assumed to be at ear height, downwind from the turbine, and the ground was assumed to be half hard, which increases sound levels. The sound modeling assumed a turbine height of approximately 521 feet and modeled a 100-foot radius from the middle of each residence. Kaliski testified the model showed the turbines met the noise limits even 100 feet away from all homes. He also stated, "Orion has indicated that if the turbine

layout or turbine models change the final configuration will meet or be below the IPCB noise standards."

¶ 22          On cross-examination, Kaliski admitted the IPCB limits were based on property lines instead of the location of residences. He also admitted moving a turbine would change his model. However, he also stated KCWF would perform final modeling of the project.

¶ 23          Ryan McGraw, vice president of development for Orion, testified about safety, construction, and operations of the project. McGraw testified that safety during construction would be covered during a pre-construction meeting with emergency service providers, which includes a briefing on unusual injuries that may occur and a proposed emergency response plan. KCWF would pay for specialized training for emergency response personnel and would have a hotline open to report concerns. The general contractor would be experienced and would have a robust health and safety program. There would also be a road-use agreement in place, with the county dictating how the project could use local roads and requiring KCWF to bear the expense of making sure roads remained in a safe and good condition.

¶ 24          McGraw testified that, during operations, full-time technicians trained in emergency response for wind farms would be onsite during normal working hours and would be on call and available to dispatch during non-working hours. A remote operations center would continually monitor the wind farm for turbine faults or emergency situations and would dispatch emergency technicians and contact local emergency service providers if necessary. KCWF would file an updated emergency response plan with the county with access to all locked facilities and contact information for onsite personnel.

¶ 25          McGraw also testified KCWF would repair any damaged drainage tile, reimburse landowners if planted crops were damaged, and remedy any interference with

telecommunications, such as television or cell service. KCWF would also work with crop dusters so any landowner within a half mile of a turbine could provide advance notice of planned crop dusting, and KCWF would shut down the turbine for a short period so aerial application could take place. McGraw further testified, when the project reached the end of its useful life, KCWF would pay to fully decommission the project, including the required posting of financial assurance in advance and restoration of disturbed land. Commitments regarding decommissioning of the project were contained in the AIMA.

¶ 26    Finally, McGraw testified extensive research demonstrated the risk of harm from wind turbine "blade throw" or "ice throw" was extraordinarily low. He stated another independent engineer present at the hearing could provide more testimony on that subject if necessary.

¶ 27    After KCWF's witnesses testified, members of the Zoning Board asked the witnesses questions about topics such as sound, shadow flicker, television and cellular interference, land usage, impact on crop dusters, road maintenance, and the construction schedule. Numerous interested parties then provided additional testimony or written statements, both in favor of the project and against it.

¶ 28    In addition, Michael Massie, an attorney representing some of the interested parties in the project, gave a presentation, during which he touted the community benefits of the project. Massie also read from a letter provided by a landowner steering committee, stating their belief unnecessary hardships would be created without the height variance. In that letter, the landowners stated:

> "Our team believes that this variance is necessary and would prevent hardship on
> both participating and non-participating landowners. Larger turbines mean fewer

turbines. That means fewer on the horizon for those opposed to the aesthetics of the wind project as well as an even lower overall footprint for participating landowners to farm around. It is in the best interest of all Knox County residents to have as little density as possible. 50 turbines of 3.0 MegaWatt Capacity are better than 100 turbines of 1.50 MegaWatt Capacity. Modern farmers do not hesitate utilizing 24-row planters, a six-fold increase over just two generations ago. Imagine if a zoning ordinance handcuffed technological progress of row-crop farming as the opposition intends to do with wind farming."

The letter added, "Utilizing the best technology is best for all."

¶ 29       During the cross-examination portion of the hearing, the hearing officer inquired as to the number of witnesses plaintiffs' counsel anticipated calling. Counsel stated:

"I anticipate that [two additional] cross examinations will take significantly longer than the first four, that's why I did them in the order I did to try to get them out of the way. Depending on how responsive the witnesses are, that's always a problem as you know, and then I have after that tonight if there's time I have probably hour, hour and a half of directs that are available to me tonight and then we have our other experts that were not able to be here tonight."

The hearing officer responded:

"Well, I'm not intending to continue this matter for another hearing date unless there's good cause for that. I will say petitioner took about an hour and 20 minutes for their information, I know you've got a wealth of exhibits you presented [to the Zoning Board] that they were able to review, I don't intend to have this go five hours where Mr. Cressner took an hour and 20 minutes."

Counsel argued KCWF's experts had months to prepare their reports, while he had five days to prepare, and his clients had ten days' notice. The hearing officer noted the statute required 15 days' notice and a hearing to be conducted within 60 days, stating "you can take that up with the state." The hearing officer further stated the proceeding was not a minitrial, it was a hearing. Counsel disagreed, stated the proceeding was a minitrial, and argued plaintiffs were being deprived of due process.

¶ 30        Plaintiffs' counsel presented three witnesses. Jason Libby testified he was a residential landowner in Knox County. In an answer to a request for admission, KCWF conceded that Kaliski's sound modeling indicated sound levels at Libby's property might exceed the levels permitted by IPCB standards at the property line. In consideration of Libby's testimony his entire property was residential, KCWF stated it would design the final engineering of the project to address the issue.

¶ 31        Joseph Abel—a land use planning, zoning, and economic development consultant—opined there were no hardships or practical difficulties justifying the requested height variation. Abel testified economic reasons were not sufficient to justify the variation. He also stated the flexibility to move the structures anywhere on the properties was unusual.

¶ 32        Kevin Martis, a certified planner and zoning administrator, opined KCWF's requested conditional use permit and variation did not meet county standards. Martis testified the existing 500-foot height limit "is far more generous than for any other land use," and therefore he thought there was no prejudice to KCWF if it were compelled to comply with the height restriction. Martis testified a purpose of regulations is to protect people from visual blight. Martis also testified concerning dangers with turbine failures and "ice throw events."

¶ 33 Martis additionally testified about noise standards, including where noise should be measured. He stated the intent of the standards was to protect property at the property line, but KCWF arbitrarily substituted a different standard without any justification. Martis testified the sound study should be rejected because it was not modeled at the property line and failed to model the actual type of turbine to be used.

¶ 34 Following Martis's testimony, the hearing officer asked plaintiffs' counsel if he had any further evidence. Counsel only requested to present a summary closing. The hearing officer then stated the hearing would be continued to May 6, 2020, for closing presentations. Counsel then stated:

> "Well, I guess if we're having May 6th I would ask to be able to bring my experts in since we're having a hearing on that day anyway. The experts that were not able to testify today on short notice, if I can get them here on May 6th I would ask that they be allowed to testify at that point."

The hearing officer responded:

> "I think at this point we're going to close any kind of cross examination or evidence. This matter has been noticed for the two days, we're only continuing into a third because of the late hour and we have a few things still to finish up."

Counsel asked for his objection to be noted for the record but did not provide information as to who he wished to have testify or the type of information they would provide.

¶ 35 On May 6, 2020, plaintiffs' counsel entered over 2,000 pages of exhibits into the administrative record addressing topics such as noise regulations, property values, health effects from wind turbines, attitudes about wind power projects, due process, and variation standards.

The exhibits also included prior testimony and presentations from witnesses at hearings for other projects and a report from a person counsel had desired to present as an expert.

¶ 36    Plaintiffs' counsel repeated his concern plaintiffs were being denied due process and stated, "We would have clearly provided you expert testimony in the following areas if we were allowed: One is sound, two is health and welfare, and three is property values." Plaintiffs' counsel then gave a closing presentation, arguing KCWF failed to justify issuance of the conditional use permit or variation. After his closing, counsel for KCWF voiced concern about the exhibits offered, stating, "we haven't seen those exhibits and therefore no way to comment on them, and obviously when [plaintiffs' counsel] closed his experts at our last meeting those experts were in the in the room so he was not prepared to have them testify." The hearing officer then stated the matter was a hearing, not a trial, and the exhibits would be allowed.

¶ 37    Following the closing presentations, the Zoning Board approved the height variation and voted to recommend approval of the conditional use permit. The Zoning Board chairperson then stated:

> "With that all building permits, requirements for both state and local
> organizations must be complied with, zoning department must be in receipt of
> these documents in compliance with everything prior to or at the time of
> submitting their works, their building permits."

¶ 38    On May 12, 2020, the Zoning Board issued extensive written findings of fact. In that document, the Zoning Board found the conditional use permit would not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare of the surrounding properties, and the project would promote the public health, safety, and general welfare of the citizens of the county, including the surrounding properties. The Zoning Board found the project

- 14 -

was compatible with the environment and had the ability to provide a new source of renewable energy. It also would provide tax revenue with limited impact to the use and enjoyment of the surrounding land. The Zoning Board noted there was a low risk of stray voltage and interference with broadcast signals. It also stated the final siting and engineering of the project must comply with IPCB regulations and take remedial actions if sound exceeded IPCB standards in any location. It further noted KCWF's commitment to generate fewer than 30 hours of shadow flicker on nearby residences in a typical year and take remedial actions if shadow flicker exceeded that limitation. The Zoning Board also specifically found the project would not substantially diminish or impair property values.

¶ 39 The Zoning Board further found the conditional use would not impede the regular and orderly development of the surrounding properties for uses in the permitted area, finding specifically wind farms are consistent with agricultural uses. The Zoning Board found the project would need minimal utility support, and KCWF could coordinate with a local utility company. The Zoning Board also found the project would generate limited traffic, and traffic during the construction period would be regulated by a written agreement between local government officials and the project.

¶ 40 The Zoning Board specifically found the height variation increasing the limit of the turbine height to 600 feet would be consistent with the conditional use, but conditioned that variation on the project adhering to a 1,500-foot setback from the residences of non-participating landowners. The Zoning Board stated KCWF must submit final shadow-flicker and sound studies to the county demonstrating the final site plan complied with IPCB regulations and the 30-hour annual limit on shadow flicker at nonparticipating residences before the issuance of

building permits. In addition, the Zoning Board stated, if permitted by the FAA, KCWF was to implement systems to reduce aircraft obstruction lighting.

¶ 41     On May 19, 2020, the County Board's Zoning Committee held a public meeting on the Zoning Board's recommendation to grant the conditional use permit. McGraw told the Zoning Committee KCWF had submitted a preliminary site plan and would submit a final site plan with its application for building permits to ensure compliance with the conditional use permit and applicable regulations. The Zoning Committee discussed KCWF's proposed decommissioning plan and obtained clarification on required setbacks. The Zoning Committee also received comments from Jay Haley indicating his shadow-flicker study modeled turbines 551 feet tall and there could be extra shadow flicker from a 600-foot turbine. Haley stated he would conduct a final shadow-flicker study demonstrating fewer than 30 hours of shadow flicker on residences based on the finalized site plan. Following its deliberations, the Zoning Committee voted unanimously to move the application for the conditional use permit to the full County Board.

¶ 42     On May 27, 2020, the full County Board considered the recommendations of the Zoning Board and the Zoning Committee to approve the conditional use permit and discussed the variation increasing the permitted turbine height from 500 to 600 feet. The County Board voted 14 to 1 to approve the conditional use permit.

¶ 43     On June 9, 2020, plaintiffs filed their initial complaint in the trial court, seeking review of the conditional use permit and height variation. In the complaint, plaintiffs alleged, in part, the Zoning Board failed to make sufficient findings of fact.

¶ 44     On August 5, 2020, the Zoning Board approved additional findings of fact concerning the height variation. The Zoning Board found using taller turbines allowed KCWF to

use fewer total turbines, thus minimizing the practical difficulties created by the limited amount of land suitable to place turbines and reducing the associated disturbances of the land and disruption of community activities during construction, operations, and decommissioning. The Zoning Board also found the difference between a 500-foot turbine and a 600-foot turbine on the landscape was "barely noticeable" and would have little to no impact on property values.

¶ 45 The Zoning Board further found advancements in wind turbine technology, including the difficulty in finding state-of-the-art turbine models less than 500 feet tall, presented practical difficulties and particular hardships for the project. In particular, the Zoning Board found the newest, most efficient turbine models were taller than 500 feet and KCWF needed access to updated models for its $170 million investment. The Zoning Board also found it would be extremely difficult for the project to be economically feasible or remain competitive if required to use shorter, outdated turbine models. The Zoning Board further found the particular hardships and practical difficulties faced by KCWF were not self-imposed.

¶ 46 On December 17, 2020, plaintiffs filed an amended complaint asserting the following counts: Count I alleged the County's approval of the conditional use permit violated procedural due process when plaintiffs had little time to prepare for the hearing and the Zoning Board limited their ability to call expert witnesses. Count II alleged the conditional use permit violated plaintiffs' substantive due process rights when it was based on models for wind turbines and locations that might differ from the final plan, and the approval of a preliminary site plan violated plaintiffs' procedural due process rights because it allowed for unknown permit officers to approve the final plan. Count III alleged the County's approval of the variation violated section 5-12009 of the Counties Code (55 ILCS 5/5-12009 (West 2020)) and section 10.5 of the Knox County Zoning Resolution (Knox County Zoning Resolution § 10.5 (eff. Sept 29, 2010))

because the Zoning Board did not issue findings of fact when the variation was approved. Count IV alleged the variation was against the manifest weight of the evidence under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)) because KCWF failed to sufficiently show practical difficulties or a particular hardship to justify granting the variation as required by section 5-12009 of the Counties Code. Count V alleged the trial court should enjoin the issuance of building permits.

¶ 47        Plaintiffs attached the May 12, 2020, findings of fact to the amended complaint as an exhibit. In addition, the August 5, 2020, findings of fact were included in the administrative record filed in the trial court. Defendants moved to dismiss counts I, II, III, and V.

¶ 48        On March 22, 2021, the trial court held a hearing on the motion to dismiss. The court dismissed count I with prejudice, finding plaintiffs were provided with timely notice, a meaningful opportunity to cross-examine witnesses, and a meaningful opportunity to be heard. The court also dismissed count III with prejudice, finding plaintiffs failed to show written findings of fact were required prior to or simultaneous with the variation decision and failed to show any specific harm as a result of written findings of fact being issued after the variation was approved. The court also dismissed count V without prejudice because it was not ripe for adjudication when the project had not yet reached the building-permit stage. The court denied the motion as to count II.

¶ 49        During discovery, plaintiffs filed a motion to compel production of additional studies KCWF completed for the project. KCWF admitted it performed a study of the sound effects of 590-foot turbines. KCWF provided the study, but counsel for plaintiffs was concerned there had been some edits to reports, could not read the native file format, and asked the trial court to order the material to be provided in pdf format. At a hearing on the matter, counsel for

KCWF stated KCWF provided all of the files, including any edits, which included some pdf files, some Excel files, and some data files that required specialized software. KCWF's counsel stated, "I can't just hit print on these things" and said they were "pure data files." KCWF's counsel stated KCWF was unable to provide the data in any other format and noted plaintiffs could have their consultant interpret the data files using the appropriate industry software.

¶ 50        Plaintiffs also moved to compel answers to interrogatories concerning information from the Zoning Board and County as to how they could approve the conditional use permit and variation when KCWF admitted the plan was preliminary and could change. Defendants responded the information sought was part of the administrative record and included in information that had already been produced. The trial court denied the motion to compel.

¶ 51        Defendants filed a motion for summary judgment as to count IV, alleging the trial court lacked jurisdiction because plaintiffs failed to provide notice of the action to at least 10 people who testified or provided written comments at the administrative hearing as required by section 3-107(c) of the Administrative Review Law (735 5/3-107(c) (West 2020)). The court denied the motion, finding the notice requirement in section 3-107(c) was mandatory but not jurisdictional. The court required defendants to provide notice as required by section 3-107(c) and allow those people 30 days to intervene in the action if they wished to do so.

¶ 52        Following discovery, defendants moved for summary judgment on counts II and IV. The trial court granted the motion. As to count II, the court found a preliminary site plan was sufficient for the Zoning Board to evaluate the project for the purposes of establishing a set of conditions to ensure the project would comport with the Wind Energy Ordinance and substantive due process principles. The court also noted plaintiffs had the right to enforce compliance. As to

count IV, the court found there was sufficient evidence presented to the Zoning Board to allow the height variation.

¶ 53        After the trial court announced its decision, counsel for defendants asked if the court's ruling was a final judgment. The court responded, "[T]hat would be a final appealable order." In the written order, the court stated the order was "a final and appealable judgment on all remaining counts" and wrote the "case is closed," but the court did not expressly find there was no just reason for delaying either enforcement or appeal or both or mention Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). The court also did not mention its previous dismissal of count V "without prejudice."

¶ 54        This appeal followed.

¶ 55                              II. ANALYSIS

¶ 56        On appeal, plaintiffs argue the trial court erred by (1) denying their motion to compel, (2) dismissing counts I and III as not in violation of procedural due process, (3) granting defendants' motion for summary judgment on count II as not in violation of both substantive and procedural due process, and (4) granting defendants' motion for summary judgment on count IV under the Administrative Review Law. Defendants cross-appealed, arguing the court lacked jurisdiction over count IV.

¶ 57                              A. Jurisdiction

¶ 58        Before proceeding to the merits of the appeal, we address two jurisdictional issues. In their cross-appeal, plaintiffs argue the trial court lacked jurisdiction over count IV because plaintiffs failed to give notice of the action to all people who testified at the administrative hearing as required by section 3-107(c) of the Administrative Review Law. In addition, while neither party discusses the matter, we note the court dismissed count V without

prejudice and did not make a specific finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Thus, there was no just reason for delaying either enforcement or appeal or both. Thus, we also address whether there is a final appealable order giving us jurisdiction over the appeal.

¶ 59          1. *Final Order in Light of Dismissal of Count V Without Prejudice*

¶ 60          We first address whether we have jurisdiction, despite count V being dismissed without prejudice and without the trial court specifically stating there was no just reason for delaying either enforcement or appeal or both as to the remaining claims.

¶ 61          "Before addressing the merits of this appeal, we have an obligation to determine whether we have jurisdiction, even though the issue was not raised by the parties." *In re Estate of Devey*, 239 Ill. App. 3d 630, 632, 607 N.E.2d 685, 686 (1993). "The jurisdiction of the appellate court is limited to the review of appeals from final judgments, subject to statutory or supreme court exceptions." *Devey*, 239 Ill. App. 3d at 632.

¶ 62          A notice of appeal must be filed within 30 days after the final judgment appealed from was entered or, if a timely posttrial motion directed against the judgment was filed, within 30 days after the order was entered disposing of the last pending posttrial motion directed against the judgment. Ill. S. Ct. R. 303(a) (eff. Jul. 1, 2017). "Ordinarily, an order dismissing a complaint without prejudice is not deemed final for purposes of appeal." *In re Tiona W.*, 341 Ill. App. 3d 615, 619, 793 N.E.2d 105 (2003).

¶ 63          In general, a nonfinal order is not appealable except under the provisions of Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016). Rule 304(a) allows for an interlocutory appeal in instances where a final judgment is entered as to one party or claim, but fewer than all parties or claims. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Rule 304(a) allows such an

interlocutory appeal "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The rule further provides, "In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable ***." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 64        Here, the trial court stated at the hearing an intent for the order to be final and appealable, provided its written order was "final and appealable on all remaining counts," and stated the "case is closed." However, it failed to make an express finding there was "no just reason for delaying either enforcement or appeal" and made no reference to Rule 304(a). The failure to do so generally makes an order not appealable under Rule 304(a). See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544, 949 N.E.2d 723 (2011). However, we determine the order nevertheless is final because, despite being made "without prejudice," the dismissal of count V was actually final.

¶ 65        The trial court here dismissed count V "without prejudice." However, the effect of a dismissal order is determined by its substance and not by the incantation of particular magic words. *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 568, 732 N.E.2d 1082, 1087 (1999). "[A] trial court's description of a final judgment as being 'without prejudice' is of no greater logical effect than a trial court's statement that a nonfinal dismissal judgment is 'with prejudice.' " *Schal Bovis*, 314 Ill. App. 3d at 568. In each instance, whether the trial court's dismissal order is final, and thereby appealable under Rule 304(a), or is not final, and therefore not appealable, is a function not of its words, but of its effect. *Schal Bovis*, 314 Ill. App. 3d at 568. Thus, if a dismissal is because of a deficiency, which could be cured by simple technical amendment, the order is not the subject of appeal. *Schal Bovis*, 314 Ill. App. 3d at 568. However,

if the dismissal is because of a perceived substantive legal deficiency—for example, the plaintiffs have not sustained damages as a matter of law and, therefore, lack standing to sue—the dismissal order is final. *Schal Bovis*, 314 Ill. App. 3d at 568.

¶ 66   Here, the trial court made its dismissal "without prejudice" after determining the issue was not ripe, which was a legal deficiency. Thus, considering the plaintiffs might incur damages in the future, the court contemplated the facts might someday ripen into an actual controversy. However, at the time of the dismissal, no such controversy existed, and there was nothing plaintiffs could do through further pleading to create such a controversy. As such, the inclusion of the words "without prejudice" in the court's order dismissing count V does not deprive us of jurisdiction under Rule 304(a). Instead, the dismissal order was final, and we have jurisdiction over the appeal. See *Schal Bovis*, 314 Ill. App. 3d at 568.

¶ 67   2. *Cross Appeal Concerning Jurisdiction Over Count IV*

¶ 68   Next, as to count IV, defendants contend the trial court lacked jurisdiction because plaintiffs failed to give notice of the action to all people who testified at the administrative hearing, as required by section 3-107(c) of the Administrative Review Law. Plaintiffs argue the failure to provide such notice was not a jurisdictional defect.

¶ 69   Resolving this issue requires us to construe sections of the Administrative Review Law. We review issues of statutory construction *de novo*. *Mannheim School District No. 83 v. Teachers' Retirement System*, 2015 IL App (4th) 140531, ¶ 11, 29 N.E.3d 1224.

¶ 70   Under the Illinois Constitution of 1970, trial courts are granted original jurisdiction over all justiciable matters, except trial courts have the power to review final administrative decisions only as provided by law. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 32, 21 N.E.3d 368 (citing Ill. Const. 1970, art. VI, § 9). The

Administrative Review Law applies to and governs every action to review judicially a final decision of any administrative agency where the act creating or conferring power on such agency, by express reference, adopts its provisions. *Slepicka*, 2014 IL 116927, ¶ 32; 735 ILCS 5/3-102 (West 2020). Under section 5-12012 of the Counties Code, all final administrative decisions of zoning boards of appeal are subject to judicial review under the provisions of the Administrative Review Law. 55 ILCS 5/5-12012 (West 2020).

¶ 71    Section 3-102 of the Administrative Review Law provides "[u]nless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." 735 ILCS 5/3-102 (West 2020). Because a trial court exercises special statutory jurisdiction in reviewing an administrative decision, a party seeking such a review must strictly comply with the procedures of the Administrative Review Law. *Slepicka*, 2014 IL 116927, ¶ 34. If the statutorily prescribed procedures are not strictly followed, jurisdiction is not conferred on the trial court. *Slepicka*, 2014 IL 116927, ¶ 34.

¶ 72    Section 3-103 of the Administrative Review Law pertains to the "Commencement of action" and provides in part, "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***." 735 ILCS 5/3-103 (West 2020).

¶ 73    Section 3-107 of the Administrative Review Law pertains to "Defendants" and provides in part, "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the

proceedings before the administrative agency shall be made defendants." 735 ILCS 5/3-107(a) (West 2020). However, it also provides,

> "No action for administrative review shall be dismissed for lack of jurisdiction: (1) based upon misnomer of an agency, board, commission, or party that is properly served with summons that was issued in the action within the applicable time limits; or (2) for a failure to name an employee, agent, or member, who acted in his or her official capacity, of an administrative agency, board, committee, or government entity where a timely action for administrative review has been filed that identifies the final administrative decision under review and that makes a good faith effort to properly name the administrative agency, board, committee, or government entity." 735 ILCS 5/3-107(a) (West 2020).

In addition,

> "If, during the course of a review action, the court determines that an agency or a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, then the court shall grant the plaintiff 35 days from the date of the determination in which to name and serve the unnamed agency or party as a defendant. The court shall permit the newly served defendant to participate in the proceedings to the extent the interests of justice may require." 735 ILCS 5/3-107(a) (West 2020).

Meanwhile, section 3-107(c) provides,

> "With respect to actions to review decisions of a hearing officer or a county zoning board of appeals under Division 5-12 of Article 5 of the Counties Code, 'parties of record' means only the hearing officer or the zoning board of appeals

and applicants before the hearing officer or the zoning board of appeals. The plaintiff shall send a notice of filing of the action by certified mail to each other person who appeared before and submitted oral testimony or written statements to the hearing officer or the zoning board of appeals with respect to the decision appealed from. The notice shall be mailed within 2 days of the filing of the action. The notice shall state the caption of the action, the court in which the action is filed, and the name of the plaintiff in the action and the applicant to the hearing officer or the zoning board of appeals. The notice shall inform the person of his or her right to intervene. Each person who appeared before and submitted oral testimony or written statements to the hearing officer or the zoning board of appeals with respect to the decision appealed from shall have a right to intervene as a defendant in the action upon application made to the court within 30 days of the mailing of the notice." 735 ILCS 5/3-107(c) (West 2020).

¶ 74   Defendants contend the trial court is deprived of jurisdiction when a party fails to comply with the notice provisions of section 3-107(c). This issue presents a matter of statutory construction.

"The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems

sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *People v. Ringland*, 2017 IL 119484, ¶ 13, 89 N.E.3d 735.

We also presume the General Assembly did not intend to create absurd, inconvenient, or unjust results. *Ringlan*d, 2017 IL 119484, ¶ 13. Thus, while statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent, a literal reading must fail if it yields absurd, inconvenient, or unjust results. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17, 120 N.E.3d 959. When reviewing the language in a statute, we also must consider the entire provision, keeping in mind its intended subject matter. *Cassidy*, 2018 IL 122873, ¶ 17.

¶ 75 While the Administrative Review Law grants special statutory jurisdiction to trial courts to review final decisions of administrative agencies, such as the Zoning Board, "within the time and in the manner herein provided," litigants have struggled to follow the terms of the Administrative Review Law and vest the court with jurisdiction. *Ryan v. Zoning Board of Appeals*, 2018 IL App (1st) 172669, ¶ 10, 116 N.E.3d 442. "The harsh consequences of seemingly minor errors have prompted the legislature to clarify the language of the [Administrative Review Law] and create exceptions for certain errors." *Ryan*, 2018 IL App (1st) 172669, ¶ 10 (citing *Fragakis v. Police & Fire Comm'n of the Village of Schiller Park*, 303 Ill. App. 3d 141, 142-43, 707 N.E.2d 660, 661-62 (1999) (outlining numerous amendments to the Administrative Review Law and referring to the practice area as a "dangerous minefield")).

¶ 76 "[I]n the context of the stricter service requirements imposed under the [Administrative Review Law], the Illinois Supreme Court has emphasized that an established rule of statutory construction is to 'liberally construe a right to appeal so as to permit a case to be

considered on its merits.' " *Ryan*, 2018 IL App (1st) 172669, ¶ 18 (quoting *Cox v. Board of Fire & Police Commissioners of Danville*, 96 Ill. 2d 399, 403, 451 N.E.2d 842, 844 (1983)). "Moreover, '[t]he underlying spirit of our system of civil justice is that controversies should be determined according to the substantive rights of the parties. This notion is not only intuitive—it is the articulated public policy of the State.' " *Ryan*, 2018 IL App (1st) 172669, ¶ 18 (quoting *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1054-55, 702 N.E.2d 274, 279 (1998)).

¶ 77        Further, while section 3-107(a) of the Administrative Review Law provides the complaint must name as defendants "the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency" (735 ILCS 5/3-107(a) (West 2020)), that requirement has been deemed mandatory, but not jurisdictional, and the legislature has created exceptions so that a petitioner may correct his or her complaint rather than seeing it dismissed for lack of subject matter jurisdiction. *Ryan*, 2018 IL App (1st) 172669, ¶ 11 (citing *McGaw Medical Center of Northwestern University v. Department of Employment Security*, 369 Ill. App. 3d 37, 43, 860 N.E.2d 471, 477 (2006)). In addition, issues of venue have been deemed non-jurisdictional based on the Administrative Review Law being part of the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2020)). See *Slepika*, 2014 IL 116927, ¶ 36. Likewise, the 35 days for issuance of a summons has been found mandatory, but not jurisdictional. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2015 Il App (5th) 150018, ¶ 7, 45 N.E.3d. 722.

¶ 78        Reading the provisions of the Administrative Review Law as a whole, we determine section 3-107(c) of the Administrative Review Law, requiring plaintiffs to provide notice to people who testified or provided written statements at the hearing, is not jurisdictional. Section 3-102 of the Administrative Review Law specifically applies to the process of seeking

review, stating "[u]nless *review is sought* of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." (Emphasis added.) 735 ILCS 5/3-102 (West 2020). The "time and manner" for seeking such a review is then delineated in section 3-103, which provides "Every *action to review* a final administrative decision *shall be commenced* by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was *served upon the party affected* by the decision ***." (Emphases added.) 735 ILCS 5/3-103 (West 2020). Thus, once the complaint is filed and necessary parties are served, the "action to review" the administrative proceeding has "commenced" in the "time and manner" provided by the statutory scheme, logically vesting jurisdiction in the trial court.

¶ 79        Meanwhile, section 3-107(a) of the Administrative Review Law dictates the necessary parties to the action, but specifically provides no action for administrative review shall be dismissed for lack of jurisdiction based on the misnomer of such a party or failure to name such a party when a good faith effort was made to do so. 735 ILCS 5/3-107(a) (West 2020). Section 3-107(c) then takes the matter a step further and provides parties of record consist only of "the hearing officer or the zoning board of appeals and applicants before the hearing officer or the zoning board of appeals." 735 ILCS 5/3-107(c) (West 2020).

¶ 80        As for people who testified at the hearing, plaintiffs are required to "send a notice of filing of the action" within two days of filing the action to those people, who may then subsequently intervene in the already commenced action. 735 ILCS 5/3-107(c) (West 2020). Thus, under section 3-107(c) of the Administrative Review Law, it is clear the people who merely testified at the hearing are not necessary parties to the action and are not required to be

notified until after the action has "commenced" in the "time and manner" provided by section 3-103. This reading of the statutory scheme is logical and comports with the plain language of the statutes. Further, to hold otherwise would lead to an absurd result under which defects in naming a necessary party or party of record may be viewed as non-jurisdictional defects under the plain language of section 3-107(a), yet the failure to provide notice of an already commenced action to people who are not parties of record and not necessary parties, and whom are merely potentially interested in the matter, would deprive the trial court of jurisdiction. Accordingly, we agree with plaintiffs and the trial court that plaintiffs' failure to provide notice to all persons who spoke or provided written comments at the hearing did not deprive the court of jurisdiction over count IV. Having resolved the jurisdictional issues presented in this appeal, we now turn to the merits of the court's denial of the motion to compel and dismissal or grant of summary judgment of each count of the petition.

¶ 81                                    B. Motion to Compel

¶ 82          Plaintiffs contend the trial court erred in denying their motion to compel. Plaintiffs argue defendants refused to produce a study concerning the sound effects of 590-foot turbines and refused to answer interrogatories regarding "information from the County as to how it could consider evidence and approve the conditional use permit and variation when KCWF admitted its plan was preliminary and would be changed."

¶ 83          A trial court has great latitude in ruling on discovery matters. *Mutlu v. State Farm Fire & Casualty Co.*, 337 Ill. App. 3d 420, 434, 785 N.E.2d 951, 962 (2003). "Absent an abuse of discretion affirmatively and clearly shown by appellant, the trial court's order concerning discovery shall not be disturbed on appeal." *Avery v. Sabbia*, 301 Ill. App. 3d 839, 844, 704 N.E.2d 750, 753 (1998). "An abuse of discretion occurs only when the trial court's decision is

arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41, 39 N.E.3d 961.

¶ 84 Here, defendants told the trial court they had provided all of the material requested. Plaintiffs asked for some material in pdf format, but defendants stated the data requested could not be converted to such a format but could be read by a specialized software program. Thus, the record does not show defendants "refused" to produce the studies. As to the interrogatories, defendants did not refuse to answer them. Instead, they noted the answers sought were already in the administrative record. Plaintiffs' question appeared to seek the legal or factual reasoning for the defendants' zoning decisions. That reasoning was present in the findings of fact, and the administrative record includes all of the testimony and documents presented by defendants. Thus, the record does not show plaintiffs were deprived of any of the information they sought. Accordingly, the court's denial of the motion to compel was not an abuse of discretion.

¶ 85                    C. Dismissal of Count I, Procedural Due Process

¶ 86 As for count I, plaintiffs contend the trial court erred in granting defendants' motion to dismiss. Plaintiffs argue they were denied procedural due process when they had little time to prepare for the hearing and the Zoning Board limited their ability to call expert witnesses.

¶ 87 Plaintiffs appeal from an order granting defendants' motion for involuntary dismissal under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). A motion to dismiss under section 2-615 of the Code tests the legal sufficiency of a complaint. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39, 215 N.E.3d 843.

> "In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the

complaint's allegations—construed in the light most favorable to the plaintiff—are sufficient to establish a cause of action upon which relief may be granted."

*Walworth Investments-LG, LLC*, 2022 IL 127177, ¶ 39.

This court conducts a *de novo* review of a section 2-615 dismissal order. *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 19, 210 N.E.3d 1251.

¶ 88        "Procedural due process is a flexible concept, and the procedural protections employed must be adapted to the particular situation." *People ex rel. Klaeren v. Village of Lisle*, 316 Ill. App. 3d 770, 778, 737 N.E.2d 1099, 1107 (2000), *aff'd*, 202 Ill. 2d 164, 781 N.E.2d 223 (2002). Generally, procedural due process refers to notice and the opportunity to be heard. *Fischetti v. Villiage of Schaumburg*, 2012 IL App (1st) 111008, ¶ 16, 967 N.E.2d 950. Procedural due process rights also generally include a right to present evidence and argument, a right to cross-examine witnesses, and impartiality in rulings upon the evidence which is offered. *Fischetti*, 2012 IL App (1st) 111008, ¶ 16; see *Interstate Material Corp. v. City of Chicago*, 150 Ill. App. 3d 944, 953-54, 501 N.E.2d 910, 916 (1986). Ultimately, the essence of procedural due process is whether the notice and opportunity to be heard were "meaningful." See *Trettenero v. Police Pension Fund of Aurora*, 333 Ill. App. 3d 792, 799, 776 N.E.2d 840, 847 (2002).

¶ 89        Of particular importance here is that "[d]ue process is flexible and calls only for such procedural protections as the particular situation demands." *Dimensions Medical Center, Ltd. v. Elmhurst Outpatient Surgery Center, L.L.C.*, 307 Ill. App. 3d 781, 796, 718 N.E.2d 249, 260 (1999) (citing *East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 419, 687 N.E.2d 1050, 1062 (1997)). In the context of an administrative proceeding, it is well-recognized that not all the accepted requirements of due process in the trial of a case are

necessary. *Dimensions Medical Center*, 307 Ill. App. 3d at 796. "Instead, the only procedure required is one that is suitable and proper to the nature of the determination to be made and that conforms to fundamental principles of justice." *Dimensions Medical Center*, 307 Ill. App. 3d at 796. All that is necessary is the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, so as to insure they are given a meaningful opportunity to present their case. *Dimensions Medical Center*, 307 Ill. App. 3d at 796. For example, "the right [to cross-examination] is not unlimited and may be tailored by the municipal body to the circumstances specifically before it." *Klaeren*, 202 Ill. 2d at 185.

¶ 90      We first note, while the record indicates plaintiffs became aware of the hearing date less than 15 days before it was held, they do not argue the notice of the hearing was statutorily insufficient. See 55 ILCS 5/5-12009.5(b) (West 2020) (providing the time and manner for notice of hearing). Nor do plaintiffs argue the statutory 15-day provision violated due process. Further, it is undisputed plaintiffs had actual notice of the hearing. Where defendants complied with statutory requirements of notice, and plaintiffs had actual notice, plaintiffs were in no way deprived of adequate notice. *Rutland Environmental Protection Ass'n v. Kane County*, 31 Ill. App. 3d 82, 85, 334 N.E.2d 215, 218-19 (1975). Thus, plaintiffs do not contend reversal is required based on the statutory time and manner of notice. Instead, they contend because they did not actually receive the notice until shortly before the hearing, they were denied procedural due process because they were not allowed sufficient time to adequately prepare and meaningfully present witnesses at the hearing.

¶ 91      Here, plaintiffs had meaningful notice and a meaningful opportunity to be heard. While the time between their actual notice and the hearing date was short, it was noted at the hearing the general matter had "been on file for quite some time." Further, plaintiffs complain

- 33 -

KCWF had a significant amount of time to prepare their application and final reports. But the process due is not based on the time KCWF spent preparing its application. Instead, at issue is plaintiffs' opportunity to be heard in response to that application. Plaintiffs were provided with, and utilized, ample time to cross-examine KCWF's witnesses and present evidence. Indeed, plaintiffs cross-examined the witnesses at length and provided thousands of pages of documents in opposition to the conditional use permit and variation. Plaintiffs also had the opportunity to call witnesses, and actually did so.

¶ 92       Plaintiffs' primary complaint about the process is the refusal of the hearing officer to continue the matter for plaintiffs to have time to provide additional experts or allow them to present witnesses when the hearing was continued to May 6, 2020. But plaintiffs had been given the opportunity to present experts on the initial hearing dates. While those experts were apparently unavailable on those dates, and plaintiffs gave a generalized description of the topics they might address, plaintiffs did not provide an explanation of how any given expert was integral to the action or how the lack of their testimony would deprive them of a meaningful ability to be heard when they had already extensively cross-examined witness and were able to present numerous documents in opposition to the application. Plaintiffs also did not guarantee their experts would be available on May 6. Further, the hearing officer's limit of the time available for the hearing was reasonable based on the time taken by KCWF in presenting its case.

¶ 93       Finally, plaintiffs' opposition was largely based on criticism the studies performed by KCWF did not rely on the actual turbine height and locations, a fact KCWF did not dispute. Plaintiffs fully cross-examined KCWF's witnesses on those specific points and fully argued the topic to the Zoning Board. Thus, we conclude plaintiffs were given the chance to

present their witnesses and did not specifically demonstrate how the absence of expert testimony denied them a meaningful opportunity to oppose the conditional use permit and variation. Accordingly, we conclude plaintiffs were not denied procedural due process.

¶ 94　　　　　D. Dismissal of Count III, Failure To Issue Written Findings

¶ 95　　　　Plaintiffs next argue the trial court erred in granting defendants' motion to dismiss count III, in which plaintiff sought a declaratory judgment the variation was void based on the Zoning Board's failure to issue written findings contemporaneous with the approval of the variation. Instead, the Zoning Board provided written findings after its decision, with additional findings issued after the lawsuit was filed.

¶ 96　　　　The Zoning Board has the authority to grant variations. Knox County Zoning Resolution § 10.4.03 (eff. Oct. 16, 2002). Under that authority, the Zoning Board must be

> "satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a variation from the comprehensive plan *** and at the same time the surrounding property will be properly protected." Knox County Zoning Resolution § 10.4.03 (eff. Oct. 16, 2002).

¶ 97　　　　Section 5-12009 of the Counties Code provides, where a variation is made by ordinance or resolution, "[e]very such variation, whether made by the board of appeals directly or by ordinance or resolution after a hearing before a board of appeals shall be accompanied by a finding of fact specifying the reason for making such variation." 55 ILCS 5/5-12009 (West 2020). The County's zoning resolution requires those findings to be written. Knox County Zoning Resolution § 10.5 (eff. Sept 29, 2010).

¶ 98 The parties have not directed us to cases discussing the timing of the promulgation of the findings of fact, nor have we found any such cases. However, in *Lindburg v. Zoning Board of Appeals of Springfield*, 8 Ill. 2d 254, 256, 133 N.E.2d 266, 268 (1956), the Illinois Supreme Court concluded the "requirement of the statute is not met by parroting the highly generalized statutory phrases, 'practical difficulties' and 'particular hardship.' " Such findings are insufficient to form the basis for granting a zoning variation. *Reichard v. Zoning Board of Appeals of Park Ridge*, 8 Ill. App. 3d 374, 382, 290 N.E.2d 349, 355 (1972). "In addition, Illinois courts have held that administrative decisions must be accompanied by findings of fact so that the basis for the decision can be determined and the decision be judicially reviewed." *Forberg v. Board of Fire & Police Commissioners of Markham*, 40 Ill. App. 3d 410, 411-12, 352 N.E.2d 338, 339-40 (1976).

¶ 99 Here, the Zoning Board issued findings of fact after it granted the variation, and it is apparent it issued additional facts after the first complaint was filed to specifically include facts specific to the practical difficulties and particular hardship faced by KCWF. Thus, plaintiffs argue the failure to properly provide sufficient findings of fact contemporaneous with the approval of the variation renders the variation void. We disagree.

¶ 100 Contrary to plaintiffs' suggestion the failure to issue findings of fact renders the variation void or in some manner permanently defeats the variation, the remedy for the failure to make findings of fact is to remand to the zoning board with directions to do so. See *Blair v. Zoning Board of Appeals*, 84 Ill. App. 2d 159, 163, 228 N.E.2d 555, 557 (1967). Thus, regardless of whether the Zoning Board's decision was sufficiently "accompanied by" the later provision of findings of fact, the findings nevertheless were eventually made and were sufficient for judicial review. Indeed, the May 12, 2020, findings of fact were attached to plaintiffs' amended

complaint as an exhibit. Further, those findings and the August 5, 2020, findings were included in the administrative record filed in the trial court. Thus, where, as here, proper findings were eventually made, and were done so before the court considered the merits of the petition, plaintiffs have suffered no prejudice, and a remand would be superfluous. Accordingly, we find the court properly granted defendants' motion to dismiss count III.

¶ 101          E. Summary Judgment on Count II, Substantive and Procedural Due Process

¶ 102          Plaintiffs next contend the trial court erred in granting defendants' motion for summary judgment on count II. Plaintiffs argue approval of the conditional use permit violated both substantive due process as applied to them and denied them procedural due process.

¶ 103          Summary judgment is appropriate when the pleadings and evidence on file show there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). We review *de novo* the trial court's grant of summary judgment. *Jackson v. Graham*, 323 Ill. App. 3d 766, 779, 753 N.E.2d 525, 536 (2001).

¶ 104          Section 5-12012.1 of the Counties Code provides decisions allowing variations from zoning ordinances will be reviewed as legislative decisions. That section states in part:

> "Any decision by the county board of any county, home rule or non-home rule, in regard to any petition or application for a special use, variation, rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.

(b) The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 55 ILCS 5/5-12012.1 (West 2020).

¶ 105    The phrase "*de novo* judicial review as a legislative decision" refers to judicial review of a zoning decision as a legislative decision, which is subject to rational basis review, as opposed to review of administrative decisions, which are subject to heightened scrutiny. See *Condominium Ass'n of Commonwealth Plaza v. City of Chicago*, 399 Ill. App. 3d 32, 47, 924 N.E.2d 596, 609-10 (2010). Thus, legislative zoning decisions are not subject to traditional *de novo* review, which requires no deference to the underlying decision. That being said, here we ultimately apply *de novo* review based on the trial court's grant of summary judgment.

¶ 106                          1. *Substantive Due Process*

¶ 107    Plaintiffs first argue the approval of the conditional use permit violated substantive due process as applied to them. In particular, they contend the approval was arbitrary when it was based on a preliminary plan that failed to consider the actual height and locations of the turbines to be built.

¶ 108    Article I, section 2, of the Illinois Constitution states "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. "Substantive due process limits the state's ability to act." *Strauss v. City of Chicago*, 2021 IL App (1st) 191977, ¶¶ 37-38, 180 N.E.3d 832, *aff'd on other grounds*, 2022 IL 127149, ¶¶ 37-38, 215 N.E.3d 87. " 'The constitutional declaration that private property shall not be taken *** without due process of law is subordinated always to the interests of the public welfare as expressed through the exercise of the police power of the State,' which

includes zoning laws." *Strauss*, 2021 IL App (1st) 191977, ¶ 38 (quoting *Trust Co. of Chicago v. City of Chicago*, 408 Ill. 91, 97, 96 N.E.2d 499, 503 (1951)).

¶ 109    "It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals." *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46, 145 N.E.2d 65, 68 (1957). Absent some classification based on factors not applicable here—such as race or gender, which invoke a higher level of scrutiny—when a municipal legislative action, such as a zoning ordinance, is challenged, it is presumed constitutional and is evaluated under the highly deferential rational-basis test. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307, 891 N.E.2d 839, 846 (2008). Under this test, a municipal ordinance will be upheld so long as the law "bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable." *Napleton*, 229 Ill. 2d at 307. "If there is any conceivable basis for finding a rational relationship, the ordinance will be upheld." *Thornber v. Village of North Barrington*, 321 Ill. App. 3d 318, 325, 747 N.E.2d 513, 520 (2001).

¶ 110    When a zoning action is challenged based on substantive due process, we examine the action for arbitrariness using the factors set out by our supreme court in *La Salle* and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 167 N.E.2d 406 (1960) (collectively, the *La Salle* factors). In *La Salle*, although the appellate court recognized each case must be determined on its own facts and circumstances, the court identified six factors that may be taken into consideration in determining the validity of a zoning ordinance: (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the

particular zoning restrictions, (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *La Salle*, 12 Ill. 2d at 46-47. In *Sinclair*, the court identified an additional relevant consideration: (7) the community's need for the proposed use and the care with which the community has undertaken to plan its land use development. *Sinclair*, 19 Ill. 2d at 378-79. As with many multifactor tests, no single factor is controlling. *Harris Bank of Hinsdale v. County of Kendall*, 253 Ill. App. 3d 708, 715, 625 N.E.2d 845, 849 (1993).

¶ 111       Here, plaintiffs do not specifically argue how each *La Salle* factor applies. Instead, they more generically focus on concerns about the health, safety, or general welfare of the public. In doing so, plaintiffs argue the following deficiencies rendered the Zoning Board's decision arbitrary and in violation of substantive due process: (1) KCWF did not show the actual locations of the turbines to be built, (2) KCWF did not show the actual height of the turbines to be built, and (3) turbine noise was not measured at the property line. Ultimately, plaintiffs argue the approval of a preliminary plan that could be changed was arbitrary and violated substantive due process.

¶ 112       We conclude plaintiffs are unable to overcome the highly deferential rational-basis test. As the trial court found, the Zoning Board adequately considered facts relevant to the *La Salle* factors. In particular, the evidence showed multiple and substantial benefits to the public as compared to the hardship imposed upon any individual property owner, showed an unlikely diminution in value of property, and addressed concerns about the health,

safety, or general welfare of the public. While models concerning shadow flicker and sound were based on turbines that might not exactly match the exact final height or location of the turbines ultimately to be used in the project, KCWF provided substantial evidence to show any height of turbine used up to 600 feet would limit shadow flicker and comply with IPCB regulations. In particular, KCWF presented evidence any changes in the turbine height and locations would be remodeled to ensure such compliance.

¶ 113       Further, as the Zoning Board noted, any turbines not in compliance would be denied a permit or a future action could be taken concerning any turbines not in compliance. That was sufficient. See Knox County Wind Energy Ordinance § 1.10(2) (providing the building-permit officer will issue a building permit for a wind energy system if the application materials show that the proposed location meets the requirements of the ordinance, building code, and the conditional use permit). Thus, the Zoning Board's action was not speculative, as plaintiffs suggest. Instead, it was reasonable. KCWF is limited by the conditional use permit to turbines up to 600 feet and have assured the turbines will comply with the conditional use permit and regulations. If KCWF fails in that respect, the matter is not an issue with the issuance of the conditional use permit. Instead, it would be an issue of compliance, and plaintiffs would not be without a remedy, as they could challenge future building permits or violations of regulations. Thus, ultimately, the record shows the grant of the conditional use permit bore a rational relationship to a legitimate legislative purpose and was neither arbitrary nor unreasonable.

¶ 114                    2. *Procedural Due Process*

¶ 115       Plaintiffs next argue the approval of the conditional use permit violated procedural due process based on the ability of a building permit officer to approve permits because (1) neither statute nor ordinance allows for an opportunity to be heard concerning the

approval of building permits and (2) the County Board delegated its power to evaluate the project to an unknown permit officer.

¶ 116    As to a meaningful opportunity to be heard, the Knox County Wind Ordinance provides:

"(1) Building permit applications shall be submitted to the Zoning Officer. The application must be on a form approved by the Zoning Officer and must be accompanied by two copies of a drawing that shows the proposed location and distance of the wind energy system with reference to the property lines of the parcel on which it is located; and residence, business, or public building on an adjacent parcel; the right-of-way of any public road that is within 500 feet; and such other information as may be specified on the application form. Construction plans prepared and sealed by a structural engineer licensed to practice in Illinois stating and illustrating compliance with the Knox County Zoning Resolutions as amended.

(2) The Zoning Officer will issue a building permit for a wind energy system if the application materials show that the proposed tower location meets the requirements of this ordinance, building code and the Conditional Use permit approved by the County Board.

(3) If the application is rejected, the Zoning Officer will notify the applicant in writing and provide a written statement of the reason why the application was rejected.

(4) The building permit must be conspicuously posted on the premises so as to be visible to the public at all times until construction or installation of the tower is complete.

(5) All Zoning Officer determinations may be appealed to the Board."

Knox County Wind Energy Ordinance § 1.10.

¶ 117　　　　　Here, under the Wind Energy Ordinance, a permit may be issued only if it meets the requirements of the conditional use permit, and the building permit must be posted. Any determination of the zoning officer may be appealed. Thus, contrary to plaintiffs' assertion, the ordinance allows for notice and an opportunity to be heard.

¶ 118　　　　　As a related matter, plaintiffs also argue the process does not allow them notice and a hearing concerning any new evidence presented during the permit process about the turbine heights and locations. However, as previously noted, section 1.10 of the Wind Energy Ordinance contains notice provisions concerning permits. Meanwhile, hearings concerning issuance of the conditional use permit have already been concluded. The issuance of building permits is unrelated to the approval of the overriding conditional use permit. Plaintiffs are also not denied an opportunity to oppose a building permit, as they may appeal any determination that a turbine meets the requirements of the conditional use permit and applicable regulations.

¶ 119　　　　　As to delegation of duty, the County Board evaluated the project, approved the conditional use permit, and has not delegated its power to the zoning officer in the permit process to change the conditional use permit. The approval of a preliminary plan was in compliance with the Knox County Zoning Resolution, which notes the power of the County Board to waive a final plan when issuing a conditional use permit and authorizes an administrative officer to approve a final plan or minor changes. Knox County Zoning Resolution

§ 10.4.04(g) (eff. Nov. 12, 1975). In its findings, the Zoning Board stated the final engineering of the project must comply with IPCB regulations and KCWF must take remedial actions if sound exceeds IPCB standards in any location. It further noted KCWF's commitment to generate fewer than 30 hours of shadow flicker on nearby residences in a typical year and take remedial actions if shadow flicker exceeds that limitation. As previously noted, the building-permit officer will approve a permit *if* it meets the requirements of the ordinance, building code, and the conditional use permit. Knox County Wind Energy Ordinance § 1.10(2). The building-permit officer does not have authority to reconsider the project as a whole and only has authority to enforce the conditional use permit. If the officer fails in that respect, plaintiffs may appeal the matter to the Zoning Board. Accordingly, plaintiffs have not been denied procedural due process.

¶ 120                                    F. Administrative Review

¶ 121        Finally, plaintiffs contend the trial court erred in granting summary judgment on count IV, arguing the Zoning Board's grant of the height variation was against the manifest weight of the evidence. In particular, plaintiffs argue the Zoning Board's finding the variation was warranted because of a practicable difficulty or particular hardship to KCWF was in error because the hardship or difficulty was self-imposed and based on economic benefits to KCWF that could not legally support allowing the variation.

¶ 122        In reviewing an action under the Administrative Review Law, factual determinations by an administrative agency are held to be *prima facie* true and correct and will stand unless contrary to the manifest weight of the evidence. 735 ILCS 5/3-110 (West 2020); *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 786, 861 N.E.2d 216, 222 (2006). "To find a determination against the manifest weight of the evidence requires a finding that all reasonable people would find that the opposite conclusion is clearly

- 44 -

apparent." *Kimball*, 369 Ill. App. 3d at 786. We review the decision of the Zoning Board, not the trial court, as the hearing officer is the fact finder responsible for overseeing testimony, making credibility determinations, and assigning weight to statements made by witnesses. *Kimball*, 369 Ill. App. 3d at 786. "In making this determination, we do not weigh the evidence or substitute our judgment for that of the administrative agency." *Kimball*, 369 Ill. App. 3d at 786. "Simply put, if there is evidence of record that supports the agency's determination, it must be affirmed." *Kimball*, 369 Ill. App. 3d at 786.

¶ 123        Section 5-12009 of the Counties Code provides in part:

"The regulations by this Division authorized may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained in cases where there are practical difficulties or particular hardship in the way of carrying out the strict letter of any of such regulations relating to the use, construction or alteration of buildings or structures or the use of land; or the regulations by this Division authorized may provide that the county board may, by ordinance or resolution determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained in cases where there are practical difficulties or particular hardship in the way of carrying out the strict letter of any such regulations relating to the use, construction or alteration of buildings or structures or the use of land[.]" 55 ILCS 5/5-12009 (West 2020).

Meanwhile, section 10.4.03 of the Knox County Zoning Resolution provides the Zoning Board with the following power:

"To authorize upon application, whenever a property owner can show that a strict application of the terms of this Resolution relating to the use, construction or alteration of buildings or structures or the use of land will impose upon him practical difficulties or particular hardship, such variations of the strict application of the terms of this Resolution as are in harmony with its general purpose and intent, but only when the Board is satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a variation from the comprehensive plan as established by this Resolution, and at the same time the surrounding property will be properly protected." Knox County Zoning Resolution § 10.4.03 (eff. Oct. 16, 2002).

¶ 124      Generally, a "particular hardship" does not mean one that is self-imposed, that a piece of property is better adapted for a forbidden use than for the one which is permitted, or that a variation would be to the interested person's profit, advantage, convenience. *River Forest State Bank & Trust Co. v. Zoning Board of Appeals of Maywood, Illinois*, 34 Ill. App. 2d 412, 419, 181 N.E.2d 1, 4 (1961). The ability to make more money from a variation, instead of through required compliance, has been held to neither be a difficulty nor a hardship authorizing the zoning board of appeals to permit the disregard of an ordinance so far as it interferes with the interested person's plans for a more profitable use. *Welton v. Hamilton*, 344 Ill. 82, 94, 176 N.E. 333, 338 (1931). As previously noted, the requirement of the statute is also not met by merely parroting the highly generalized statutory phrases, "practical difficulties" and "particular hardship." (Internal quotation marks omitted.) *Reichard*, 8 Ill. App. 3d at 382.

¶ 125 Here, in its August 5, 2020, findings, the Zoning Board found advancements in wind turbine technology, including the difficulty in finding state-of-the-art turbine models less than 500 feet tall, presented practical difficulties and particular hardships for the project. The Zoning Board found the newest, most efficient turbine models were taller than 500 feet and KCWF needed access to updated models for its $170 million investment. The Zoning Board also found it would be extremely difficult for the project to be economically feasible or remain competitive if it were required to use shorter, outdated turbine models. While those findings reflect economic considerations, the findings reflect more than a mere ability to make a greater profit through obtaining a variation. Instead, the Zoning Board found the entire feasibility of the project was at risk absent the variation when the project had multiple substantial benefits for the community, including a $170 million investment in the community. As such, the variation was not sought solely for KCWF's convenience or economic interest, it was sought based on interests of the overall community as well.

¶ 126 Moreover, the Zoning Board further found using taller turbines allowed KCWF to use fewer total turbines, thus minimizing the practical difficulties created by the limited amount of land suitable to place turbines and reducing the associated disturbances of the land and disruption of community activities during construction, operations, and decommissioning. That particular finding addressed a particular difficulty or hardship unique to the limited amount of suitable land that was not self-imposed by KCWF or merely for KCWF's economic interests or convenience. That finding was supported by the Power Point demonstration provided at the hearing and by the landowner steering committee's letter to the Zoning Board. As a result, the grant of the variation was not against the manifest of the evidence. Thus, the trial court did not err in granting defendants' motion for summary judgment on count IV.

¶ 127                    III. CONCLUSION

¶ 128        In summary, we determine we have jurisdiction over the appeal and the trial court

properly denied plaintiffs' motion to compel, properly dismissed counts I and III of the

complaint, and properly granted summary judgment on counts II and IV. Accordingly, for the

reasons stated, we deny plaintiffs' cross-appeal and affirm.

¶ 129        Affirmed.

*Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Knox County, No. 20-MR-55; the Hon. William A. Rasmussen, Judge, presiding. |
| **Attorneys for Appellant:** | Phillip A. Luetkehans, Brian J. Armstrong, and Giovanni Padilla, of Leutkehans, Brady, Garner & Armstrong, LLC, of Itasca, for appellants. |
| **Attorneys for Appellee:** | Dmitry Shifrin and Benjamin Jacobi, of Polsinelli PC, of Chicago, for appellee Knox County Wind Farm, LLC.<br><br>Lance Neyland, of IFMK Law, Ltd., of Northbrook, for other appellees. |